## DECEMBER TERM, 1876.

| 6 | 17 |
|---|---|
| 20 | 105 |
| 22 | 179 |
| 25* | 365 |
| 29* | 439 |

| 6 | 17 |
|---|---|
| 24 | 159 |
| 33* | 535 |

| 6 | 17 |
|---|---|
| f33 | 370 |

| 6 | 17 |
|---|---|
| 40 | 351 |

THOMAS MURRAY, APPELLANT, *v.* MARY ANN MURRAY, JOHN MURRAY AND MARIA DODGE, RESPONDENTS.

PRACTICE—EXCEPTIONS.—When any part of a charge given is sound, a general exception to the charge as a whole cannot be sustained. To maintain an exception to a refusal to charge an entire series of propositions, each one of the propositions must be sound. An exception to such portions of a charge as are variant from disrequests made by a party, not pointing out the variance, cannot be sustained.

FOREIGN JUDGMENT—MAY BE ATTACKED COLLATERALLY, WHEN.—When a party seeks a benefit under a judgment or decree of a superior court of another state, in an action where such judgment or decree cannot be pleaded, he may offer such judgment or decree in evidence, and the adverse party having had no opportunity to attack it by a direct proceeding in the home tribunal, may attack it and impeach it by evidence of want of notice to the party, and by evidence of fraud in procuring it, notwithstanding such decree or judgment may by its recitals appear regular and show jurisdiction.

INSTRUCTIONS—PRESUMPTIONS OF LIFE.—The legality of a marriage between A. and M. having become material, and such marriage having been attacked on the ground that a former husband of A. was living when it took place; the court instructed the jury, that in case of the two conflicting presumptions, namely, the presumption of life and that of innocence, the latter presumption ought ordinarily to prevail, and that if they believed certain testimony tending to prove the death of the first husband at the time of the marriage in question, they ought to presume that such first husband was dead at that time: *Held*, that this instruction was error; that its effect was to declare that a conclusive presumption of death existed upon the testimony; that the jury should have been instructed to consider all the evidence bearing upon the question, and then, preferring to find innocence rather than guilt, to find whether or not the first husband was dead when the second marriage took place.

APPEAL from Lane County.

This is an action by Thomas Murray to recover the possession of certain real estate of which he claims to own an undivided one-third, as tenant in common with his two sisters, Ellen and Jane. Thomas Murray and his sisters named, are the children of John Murray, deceased, by a first marriage—Winnifred Murray being their mother. Thomas claims as the heir at law of John Murray. The property in dispute is the latter's half of a donation under the act of congress known as "The donation act." The respondent, Mary Ann Murray, is the alleged second wife of John Murray, deceased, and the respondents John Murray and Maria Dodge are the children of such alleged marriage. It is claimed on behalf of the appellant that Winnifred was the lawful wife of John Murray at the time of this alleged marriage between him and Mary Ann; that Mary Ann had a husband living at the same time; and that respondents John Murray and Maria Dodge are not the legitimate children of said John Murray, deceased.

On the trial in the court below, the testimony of Mary Ann was secured to the effect that in 1849 one Allen, the husband of said Mary Ann, went away to Missouri; that in the latter part of the same year a friend who had accompanied him returned and gave her a ring which Allen owned and took away with him, and at the same time told her that Allen was dead, and that she never heard of him thereafter.

The decree of an Indiana court divorcing John and Winnifred was also received in evidence. The decree was rendered in 1852. Winnifred was living in Illinois when this decree was rendered, having moved and lived there with her husband prior to this time. She had no notice of the divorce proceedings. The court below gave instructions to the jury which are fully set out in the opinion, and which involve the error relied upon in the appeal. Under these instructions the jury found that the appellant was the owner of one-fifth of the premises in question, and judgment was rendered accordingly.

*F. A. Chenoweth*, for appellant:

Jurisdictional inquiry in domestic judgments is confined to the record. This is not the rule as to judgments of sister states. (Freeman on Judgments, secs. 131–133; 13 Ohio, 446; 30 Ill. 109; 5 Wend. 148; *Harris* v. *Hardman*, 6 Barb. 613; 14 How. U. S. 334; 5 Wall. 305.)

The decree of the Indiana court at most could have only been evidence, the weight of which the jury was the sole judge. This decree not having been pleaded as defense was not at bar. If the court should have admitted it at all, he should have instructed the jury that it was only evidence, and that if the jury believed that John Murray was, at the time he filed his bill, a citizen of Illinois and not of the state of Indiana, the court had no jurisdiction of either the parties or subject-matter. The instruction as to the legal effect of the decree of divorce read in evidence assumed one of the very questions in controversy. This was error. (27 Cal. 319; 3 Pick. 288.)

The court erred in the second instruction by telling the jury in substance that they "ought to presume that defendant's husband was dead at the time she married John Murray." Whereas the court ought to have submitted to the consideration of the jury the testimony, and should have left them the sole judges as to the credibility of the witnesses and the fact to be established. (Civ. Code, secs. 673, 198.)

The court erred in telling the jury "that the question of fraud in procuring the divorce by John Murray against Winnifred Murray was not a question before the jury. (Freeman on Judgments, sec. 580; also sec. 250 of Freeman; 4 Lansing, 388; 14 Mass. 224; 12 N. H. 200; 2 Gray, 369; 20 Cal. 442; *Hanover* v. *Turner*, 14 Mass. 227; 2 Kent's Com., 109; 5 Johns. 37; 1 N. H. 242; 4 Conn. 380.) Every party is at liberty to show that the court was imposed on by collusion. (*Thompson* v. *Whitman*, 18 Wallace, 457. Same doctrine affirmed, 19 Wallace, 61.) Proof of jurisdiction allowed—judgment may be attacked collaterally. (11 How. U. S. 437; 14 Id. 334; 15 John. 141; 5 Wend. 156.)

The court erred in instructing the jury "that all the matters stated in the complaint were found by the court, and that the record imported verity. The fact of *bona fide* residence and the testimony on that point is here taken from the jury. This is a jurisdictional matter, and is open to inquiry upon judgments of sister states. (41 N. Y. 272; 46 N. Y. 30; 25 Mich. 247; 51 Mo. 69; 16 Id. 102; 5 Wallace, 290, 305; 14 How. U. S. 334; 5 Wend. 156; 9 Wisc. 328; 22 Iowa, 328; 2 Kent's Com., tit. Foreign Divorce; 18 Wallace, 457; 19 Wallace, 58.)

The respondents could have pleaded this decree of divorce as a defense, and as a bar if they had desired to rely upon it, but not having done so, it is not for them now to say this is a collateral attack. The authorities may not be perfectly clear in ejectment cases, but it seems to me under the code such matters must be specially pleaded if relied upon as a defense. (Van Santvoord's Pleading, 209, Moak's edition; page 272 of old edition, and note 2.)

*J. M. Thompson and R. S. Strahan,* for respondents:

I. A party excepting must make his objections specific, and must point out the exact nature and extent of the objection relied on, to be available for review. (*Thomas* v. *Fleury,* 26 N. Y. 26; *Buck* v. *Remsen,* 34 N. Y. 383; *Mallory* v. *Perkins,* 9 Bosw. 424, 572; *Varnum* v. *Taylor,* 10 Bosw. 148; *Van Amrige* v. *Barnett,* 8 Bosw. 357–671; *Hotchkins* v. *Hodge,* 38 Barb. 117, 413, 445; *Graham* v. *Chrystal,* 1 Abb. P. N. S. 121.)

II. Exceptions to the charge of the court should point out the specific portions of the charge excepted to, and should be made at the time of trial. (*Hicks* v. *Coleman,* 25 Cal. 123.)

III. A general exception to the charge to the jury will not be sustained if any part of the charge is correct. (*Lincoln* v. *Chaflin,* 7 Wall. 132.)

IV. A general exception to the whole charge will not lay ground for review in detail, even when taken to each and every ruling, severally, separately and distinctly. (*Newell* v. *Doty,* 34 N. Y. 89, 93; *Magee* v. *Badger,* 34 N. Y. 247;

*Chamberlain* v. *Pratt,* 33 N. Y. 47, 53; *Mershon* v. *Ins. Co.*, 34 Iowa, 88; *Willetts* v. *Howland,* 5 Selden, 171; *Elton* v. *Markham,* 20 Barb. 346; *Cronk* v. *Canfield,* 31 Barb. 172; *McCabb* v. *Smith,* 24 Iowa, 591; *Hubbell* v. *Welden,* Hill & Denio, 145; *Goodwin* v. *Perkins,* 39 Vt. 605; *Gilman* v. *Thiess,* 18 Wis. 528; *Hicks* v. *Coleman,* 25 Cal. 146.) But if the court shall be of a different opinion as to any of said attempted exceptions, we claim:

V. That the objections to the two records from the state of Indiana are frivolous. Possibly those objections might raise a question as to the legal effect of those records; but being authenticated in the manner provided by law, they were clearly admissible. (Sec. 1, act of congress, 1790: Code, sec. 730.)

VI. The effect of a judicial record of a sister state is the same in this state as in the state where it was made. (Civil Code, sec. 728.)

VII. That the court properly declared the effect of the judicial record offered in evidence. (*McQuigg* v. *McQuigg,* 13 Ind. 294; *Noel* v. *Ewing,* 9 Ind. 52; 12 Ind. 665; 2 Am. Lead. cases, 638, 5 ed.; *Lewis* v. *Lewis,* 9 Ind. 105; *Rourke* v. *Rourke,* 8 Ind. 430; *Tolen* v. *Tolen,* 2 Black. 407; *Wilcox* v. *Wilcox,* 10 Ind. 436; *Rindge* v. *Rindge,* 22 Ind. 35; *McFarland* v. *McFarland,* 40 Ind. 458; *Cheever* v. *Wilson,* 9 Wal. 108.)

VIII. The law as laid down by the court as to the presumptions of life, death, innocence and legitimacy was correct. (1 Greenleaf's Ev. sec. 35.)

By the Court, SHATTUCK, J.:

The view taken by the court in this case renders it unnecessary to consider any of the matters inserted by the bill of exceptions, excepting those presented by the instructions asked by the defendants and given by the court. These instructions were in these words: "The legal effect of the decree read in evidence in the cause of *John Murray* v. *Winnifred Murray* was to dissolve the marriage relation then existing between them. It left both of them free to contract other marriage relations if they saw proper to do so."

"In case of two conflicting presumptions, namely, the presumption of life and the presumption of innocence, the latter presumption ought ordinarily to prevail. And although you may believe from the evidence that in 1849, the defendant, Mary Ann Murray, was then the wife of one Allen; if you further find that about that time said Allen went away to Missouri from the state of Illinois, where he then resided, and that a friend accompanied said Allen to Missouri, and returned in the latter part of the year 1849, and delivered to said Mary Ann a ring which Allen owned and had with him at the time of his alleged death,.and at the same time told her that Allen was dead, and that she never heard of him being alive thereafter; and that sometime in 1852, said Mary Ann intermarried with John Murray, and that said Mary Ann and John Murray thereafter lived together as husband and wife, and had children born to them. Then, in such case, you ought to presume that the first husband of Mary Ann (Mrs. Allen) was dead at the time of said second marriage; and in such case the law raises such a presumption in favor of the legitimacy of children born of such marriage."

"If you believe from the evidence that said Mary Ann and John Murray were married in the state of Indiana, about the year 1852, and the defendants, John Murray, jun., and Maria Dodge were born to them of said marriage, then said John and Maria are lawful heirs to said John Murray, sen., and would be entitled to share his estate equally with any other lawful heirs or children said John Murray, sen., may have left surviving him."

"The jury is not at liberty to review the question of divorce between John and Winnifred Murray. That question is settled by the decree read in evidence, and it is the duty of the court to declare to you the legal effect of that decree, and of the jury to take the law as given you by the court."

"The question of fraud in procuring the divorce by John Murray against Winnifred Murray is not a question before the jury; all those questions were settled by the court that rendered the decree, and all the matters stated in the com-

plaint were found by the court, and the record imparts verity, and cannot be contradicted except by showing that the court making the decree had no jurisdiction of the parties to the suit or the subject-matter."

To these instructions the plaintiff excepted generally without specifying any particular proposition to which his exception was directed. The plaintiff then asked the court to give certain instructions, which were embodied in nine distinct paragraphs, which the court refused to give, and the plaintiff again excepted generally to the refusal, not pointing his exception to any particular paragraph refused. This state of the case renders it proper for this court to declare the rules relative to exceptions of this kind, and it is this: 1. When any part of a charge given is sound, a general exception to the charge as a whole cannot be sustained; 2. To maintain an exception to a refusal to charge an entire series of propositions, each one of the propositions must be sound; 3. An exception to such portions of a charge as are variant from the requests made by a party, not pointing out the variance, cannot be sustained. (*Beaver* v. *Taylor*, U. S. Supreme Court, Oct. Term, 1876, Law and Eq. Rep., vol. 2, 648; 11 N. Y. 416; 1 Wallace, 644; 2 Id. 328; 40 N. Y. 556.)

Applying the first of these rules to the instructions given, if any proposition embodied therein is sound as applied to this case, then the exception must fail. If the whole is unsound as applied to this case, then the exception may be sustained. After careful consideration of the whole charge given, we think it embodies three propositions: one as to John Murray's capacity to contract marriage in 1852; another as to Mary Ann's being free to marry in 1852; and another as to the legitimacy of the defendants, Maria Dodge and John Murray, jun. The latter proposition, however, is dependent upon the other two, and results from the law and facts assumed by them.

The proposition relative to John Murray's right to marry in 1852 is based upon the assumption that he was duly divorced from Winnifred by the decree offered in evidence, from the Indiana, Pike county, circuit court. The propo-

sition of the plaintiff was that that decree, if not to be pronounced void on its face, could at least be attacked, and the presumption arising therefrom overcome by evidence of want of notice to the defendant, Winnifred, want of jurisdiction, and fraud practiced on Winnifred in the procuring of the decree. There was evidence given tending to show fraud, want of notice, and want of jurisdiction. The instructions given by the court withdraw all this from the consideration of the jury, and the court virtually decided for the jury the question of John's divorce, and declared that the decree was conclusive, and that the jury must not go any farther on that subject.

This raises a question as to the effect of decrees obtained as this was in a sister state, and it is proper that the rule which we adopt should be clearly stated.

This court has decided, *Tustin* v. *Gaunt,* 4 Or. 305, that a domestic judgment of a superior court cannot be collaterally impeached by evidence outside the record, but may be impeached by what appears upon the face of the record, if thereby a want of jurisdiction is shown.

It has also decided that a domestic judgment or decree not showing on its face a want of jurisdiction can be impeached by a direct proceeding, wherein the recitals of the judgment or decree apparently showing complete jurisdiction may be denied and put in issue by direct allegations. (*Heatherly* v. *Hadly,* 4 Or. 1.) It has also decided that whenever the form of action or suit allows, a party seeking the benefit of a judgment or decree must plead it. (*Ellen Murray* v. *Mary Ann Murray,* suit in equity decided at this term.)

But we think that if a party seeks a benefit under a judgment or decree of a superior court of a sister state, in an action where such judgment cannot be pleaded, as in this case, being an action to recover real property under our statute, he may offer it in evidence; and inasmuch as his adversary has had no opportunity to attack it in our own court by a direct proceeding, and should not be required to go into the foreign state to attack it in the court where it was rendered, he may attack it and impeach it by evidence of want of notice to the party, and by evidence of fraud in

procuring it; notwithstanding such decree or judgment may by its recitals appear regular and show jurisdiction. (*People* v. *Dowell*, 25 Mich. 247; *Kerr* v. *Kerr*, 41 N. Y. 272; *Hoffman* v. *Hoffman*, 46 N. Y. 30.) We therefore hold that it was error in the circuit court to withdraw from the consideration of the jury the evidence tending to show want of notice and fraud in procuring this Indiana divorce.

As to the proposition that Mary Ann Allen was free in 1852 to marry a second time, the charge starts out with the statement of a general rule that, if standing by itself, would probably be held correct, but connected as it is with what immediately follows, we think it involved error. It may be true that innocence is to be presumed, and that when the presumption of life is brought in conflict with the presumption of innocence, the latter should prevail; yet the court here carried this instruction so far as to charge the jury that if they believed certain matters testified to by Mary Ann, mostly hearsay, they ought to presume that Allen, the former husband of Mary Ann, was dead in 1852, when she married Murray, although Allen had not been absent at that time more than three years. Ordinarily the death of a party would not be presumed until after an absence of seven years without being heard from. But if within the seven years the presumption of life is to be overcome by the presumption of innocence, then the entire case and circumstances under which a party claims such force for this presumption of innocence ought to be carefully considered.

We think, therefore, that it was error to instruct the jury that upon the narrow statement of facts set forth in the instruction they ought to presume that Allen was dead; in other words, that Allen's death was a conclusive presumption. The jury should rather have been told to consider all the evidence relating to Allen's going away, and why, and for what reason he went as appearing by the proof, and then preferring to find innocence rather than guilt, say whether or not they believed Allen dead when Mary Ann married the second time.

The correctness of the third proposition, as to the legiti-

macy of John, jun., and Maria, is dependent entirely on the correctness of the other two involved in the charge. Those two being deemed erroneous, the charge as a whole is deemed erroneous, and the exception is therefore sustained.

The judgment below will be reversed and the cause remanded for a new trial.