Weiss *et al. v.* Guerineau.

## No. 12,595.

## WEISS ET AL. *v.* GUERINEAU.

JUDGMENT.—*Collateral Attack.*—A party against whom an unauthorized or inequitable judgment has been obtained, whether by fraud or mistake, can not treat the judgment as invalid, until he has taken some proceedings known to the law to set it aside, or to secure its modification.

SUBROGATION.—*Payment of Debt of Another.*—One who, for the protection of his own property, is compelled to pay a debt, to which he is a stranger, and for the payment of which another is either legally or equitably bound, becomes entitled, on the principles of subrogation, to avail himself of all the remedies to which the person to whom the payment was made was entitled.

SAME.—*Liability of Party for Whose Use Money has been Paid.*—In such case, the party so paying money for the protection of his property, may maintain an equitable suit as for money paid to the use of the other.

SAME.—*Judgment.*—*Payment in Pursuance of.*—Where money has been paid in pursuance of a judgment, such judgment can not be interposed to prevent a recovery, in case the person receiving the money so paid fails to discharge an obligation against himself, which obligation, as a result

of the same judgment, it became his duty to pay out of the money so received.

From the Vigo Circuit Court.

*I. H. C. Royse, R. B. Stimson, S. C. Stimson* and *R. Dunnigan,* for appellants.

*H. C. Nevitt* and *J. W. Shelton,* for appellee.

MITCHELL, J.—Prior to the year 1873, Robert N. Hudson, being the owner in fee simple of out-lot No. 34, in the city of Terre Haute, executed an indenture of mortgage, by which he conveyed the lot so owned and described to George P. Bissell as security for a loan of $15,000.

The lot extended lengthwise from Fifth to Sixth streets, the west frontage abutting upon the first, and the east upon the last above mentioned street. On the north the lot was bounded by Oak street, and on the south by an alley. As it is described, the tract apparently comprised the whole of one-half square or block.

Subsequent to the mortgage to Bissell, Hudson conveyed, by deed of general warranty, seventy-four feet in depth across the west, or Fifth street frontage, to A. F. Smith, who subdivided the part so conveyed, designating and numbering the several parcels into which he divided it, as lots 1, 2, 3, 4, 5 and 6, respectively, in Smith's subdivision of out-lot No. 34. Except the seventy-four feet above mentioned, the title to out-lot 34 remained in Hudson, the part remaining unsold being designated as the "Hudson residence."

Soon after the subdivision, Smith conveyed lots 1, 3 and 4 to the appellants, Weiss and Greenawalt. Lot 2 was conveyed to George C. Duy and wife, while the title to lots 5 and 6 was retained by Smith.

Afterwards Duy and wife executed two separate mortgages for $1,000 each on lot 2, and Smith executed one for a like amount on lot 6, the three mortgages thus executed having been given to secure debts due from the several mortgagors to Mary A. Guerineau.

Pursuant to a decree of the United States District Court for the District of Indiana, by which decree all those interested in out-lot 34, as above detailed, were bound, the whole tract was sold at a marshal's sale on the 11th day of September, 1878, to satisfy the Bissell mortgage. George P. Bissell became the purchaser at this sale. Before the time for redemption expired, Weiss and Greenawalt, for the purpose of protecting their title to lots 1, 3 and 4, above mentioned, secured an arrangement with Bissell, by which they subsequently acquired title through the Bissell decree to the entire tract.

In consummating this arrangement with Bissell, it became necessary or convenient for the appellants, Weiss and Greenawalt, to make a new loan from Bissell of $11,000. This loan was secured by the appellants giving Bissell their personal obligations for $10,000 and $1,000 respectively. The $10,000 was secured by a new mortgage on the Hudson residence, while lot 6 was mortgaged to secure the $1,000 note. The appellants paid Bissell the residue of the amount due on his purchase under the decree in cash.

Prior to, and in contemplation of, the arrangement above mentioned with Bissell, the appellants made a written contract with Hudson, the effect of which was that upon certain conditions and considerations therein mentioned, the time for redemption from the sale under the Bissell decree, or the right to repurchase the property, was to be extended six, and contingently twelve months, beyond the statutory period. The provisions of this agreement were to inure to the benefit of, and be available to any of those interested as grantees or mortgagees under Hudson.

The parties having subsequently disagreed as to their rights and obligations under the agreement last above mentioned, Hudson filed a bill against the appellants, asking the intervention of the court, to compel the execution of the contract, and to permit him to redeem according to its terms. A similar proceeding had been commenced for a like purpose by the appellee and his sister Adelaide, they having succeeded as the

heirs of Mary A. Guerineau, deceased, to the mortgages above mentioned on lots 2 and 6.

The proceedings thus separately commenced were consoli-dated prior to the hearing.   After the consolidation a decree was given, the effect of which was to establish the right of all or either of the several complainants in the consolidated proceeding to redeem or repurchase the property, upon the condition that within a time limited in the decree the sum found to be due the appellants should be tendered and paid.

An account was stated, and it was found and adjudged that there was due the appellants the sum of $24,504.39.   The court appointed a commissioner, and directed that, whenever it was made to appear, that either of the parties complainant in the proceeding had paid the sum found due, within the time limited, a conveyance of the entire tract should be made to the person so paying.   It was also made a part of the decree that the person so redeeming might assume and ultimately pay off the appellants' $10,000 note which was secured by the mortgage on the Hudson residence, such assumption and payment to be a part liquidation of the $24,504.39 found to be due the appellants.   Concerning the mortgage on lot 6 the decree was silent.

Within the time stipulated the appellee, Louis A. Guerineau, paid the amount required and received a deed from the commissioner, according to the terms of the decree.

When the account was taken at the hearing above referred to, the mortgage on lot 6 for $1,000 was of record unsatisfied.   The appellants' attorneys, supposing it to be the truth, stated to the court that the debt secured by that mortgage had been paid off by the appellants.   Statements were made by the appellants, or others on their behalf during the progress of the hearing, similar in effect.   These statements were accepted as true, both by the court and the appellee, and the amount of this mortgage, as also the $10,000, was included in the $24,504.39, which was found to be the sum required to be paid in order to redeem.   Upon the supposi-

tion that the $1,000 had been paid by the appellants, no provision was made in the decree respecting its assumption by the persons entitled to redeem.

After the amount had been paid by the appellee, according to the terms of the decree, and after the deed had been made to him by the commissioner, it turned out that the debt secured by the mortgage on lot 6 had not been paid, and the holder thereof soon after instituted suit and obtained a decree of foreclosure thereon against the lot. The appellants refused to pay off the debt, and in order to protect his title to lot 6, the appellee was compelled to pay $1,250.89.

The facts above stated are extracted from the first paragraph of the complaint, and the exhibits attached thereto. This action was brought by the appellee against the appellants to recover the amount paid as stated above to redeem lot 6.

The court overruled a demurrer to the complaint, and upon issues made thereon, a trial was had resulting in a verdict and judgment for the plaintiff below for the amount so paid.

The propriety of the ruling of the court, in overruling the demurrer to the complaint above summarized, is the chief subject of discussion.

On behalf of the appellant, it is contended that while the decree under which the redemption was made, and which fixed the amount to be paid to the appellants, is permitted to stand, the question litigated in this case is *res adjudicata,* and, therefore, not open to further inquiry. The argument is, that in the nature of the case, all matters affecting the equities between the parties, as respects the amount to be paid in order to redeem, were before the court and became the subject of inquiry in that proceeding.

The rule that a question once passed upon by a court of competent jurisdiction, is forever settled as to the parties to the record, while the judgment or decree which determines that question remains unreversed and in force, is invoked as

an estoppel against the appellee. Within this rule, it is claimed, the former judgment presents an insuperable obstacle against the right of the plaintiff to recover upon the facts disclosed in his complaint.

Conceding the general rule, the appellee nevertheless insists that it does not control in this case. His contention is, that the doctrine of *res adjudicata* does not apply here, because the inquiry concerning the amount to be paid in order to effect a redemption, was merely incidental or collateral to the matter in issue in that proceeding. Hence it is said, this action may be maintained notwithstanding the former judgment, because the appellant, by representing that the mortgage on lot 6 was paid off, when in truth it was not, thereby perpetrated a legal fraud, both upon the court and the appellee. Neither view thus put forward affords a satisfactory solution of the case, as we regard it, upon the facts disclosed. The amount required to be paid in order that a redemption might be effected under the Hudson contract, was so directly involved, and was so material, that the decree in that respect must be regarded as conclusive upon all those who were parties to that proceeding. While that decree remains without modification, the sum therein specified, as the amount then due the appellants, is not open to collateral inquiry. That judgment conclusively fixed the sum of $24,504.39 as the amount due the appellants. So long as that adjudication is allowed to stand, it must be regarded as speaking the exact truth, in respect to the rights and liabilities of all those who were parties to it, so far as their rights, therein involved, existed on the day the decree was given.

A party against whom an unauthorized or inequitable judgment has been obtained, whether by fraud or mistake, can not treat the judgment as invalid until he has taken some proceeding, known to the law, to set it aside, or to secure its modification.

Methods for obtaining a new trial, or to review a judgment for material new matter, or for error of law, are pointed out

by the statute, and beyond the methods thus prescribed, courts possess inherent power, to an almost unlimited extent, to redress wrongs by modifying or setting aside judgments obtained by fraud or mistake.

These methods, however, all contemplate proceedings in the case in which the unauthorized judgment is alleged to have been obtained. They give no countenance to the notion, that a judgment, however wrongfully obtained, may be ignored, and the rights of the parties again inquired into, in a collateral proceeding. So long as the judgment stands, not being void, it concludes the parties upon the subjects therein determined. *United States* v. *Throckmorton,* 98 U. S. 61; *Krekeler* v. *Ritter,* 62 N. Y. 372; *Aurora City* v. *West,* 7 Wall. 82; *Wiley* v. *Pavey,* 61 Ind. 457 (28 Am. R. 677); *Cavanaugh* v. *Smith,* 84 Ind. 380; *Reid* v. *Mitchell,* 93 Ind. 469; Freeman Judg., secs. 334, 287–9; Bigelow Estop. 148–9.

The case before us must, therefore, be determined with the fact in view, that the rights of the parties, so far as they were involved in the proceeding which settled the appellee's right to repurchase or redeem lot 34, are conclusively settled by that decree.

That adjudication determined that there was due the appellants, on the date of the decree, the sum of $24,504.39. That is to be accepted as the fact, as it then existed, and is not to be the subject of further inquiry.

It does not follow that the appellee is not entitled to recover the money he has been compelled to pay in order to protect the title he acquired as a result of the decree.

The amount required to be paid in order to redeem from the Bissell sale, was a specified sum, ascertained to be due at a given date. That sum was reckoned upon the basis that the appellants had, by paying off the Bissell claim, acquired his right, and occupied his place. The result of the decree was, that a redemption could only be had upon paying the sum so found to be due. It was equally a result of the decree, that when the sum so ascertained should thereafter be

paid, the person so paying should acquire the title to out-lot 34, in the same right that it was held under the Bissell sale. The amount of the purchase-money due on the Bissell sale, inclusive of interest, costs, expenses, and improvements made to the property, under the Hudson contract, less the amount of rents received by the appellants, was adjudged to be the sum above stated. The appellants, however, had not in fact paid the whole amount due Bissell. Of the sum treated as actually paid to Bissell, $11,000 was paid by the notes of the appellants, which notes were secured by mortgages on the property to be redeemed. This $11,000, so secured, was all included in, and went to make up the aggregate of $24,504.39, the amount found due the appellants. It was mutually arranged that $10,000 of this amount might be liquidated by the appellee's assumption of the appellants' debt, which was secured by the mortgage on the Hudson residence.

In reference to the $1,000 secured on lot 6, no arrangement was made. That sum, as the whole might have been, was treated as having been actually paid. Instead of reserving the right to assume and pay that off, the appellee paid the amount with the residue, except the $10,000, to the appellants. That was in strict compliance with the terms of the decree and with the rights of the parties. Having received the money, it became the duty of the appellants to pay off their debt, and relieve the appellee's property from the encumbrance. Failing to do so, the appellee has been compelled to pay the appellants' debt in order to protect his title.

This, therefore, presents the ordinary case of one person paying a debt for which another was personally and primarily liable, in order to protect his own property. In such a case, the person so paying is entitled to recover from one whose default has imposed upon him the burden of paying a debt, for which he was neither legally nor equitably liable. *Dunning* v. *Seward,* 90 Ind. 63, and cases cited; 3 Pomeroy Eq. Juris., section 1300.

One who, for the protection of his own property, is com-

pelled to pay a debt to which he is a stranger, and for the payment of which another is either legally or equitably bound, becomes entitled, on the principles of subrogation, to avail himself of all the remedies to which the person to whom payment was made was entitled. Or he may maintain an equitable suit as for money paid to the use of the other. *Brice's Appeal*, 95 Pa. St. 145; *Stiger* v. *Bent*, 111 Ill. 328; *Binford* v. *Adams*, 104 Ind. 41.

Where money has been paid in pursuance of a judgment, such judgment can not be interposed to prevent a recovery, in case the person receiving the money so paid fails to discharge an obligation against himself, which obligation, as a result of the same judgment, it became his duty to pay out of the money so received.

The application of the foregoing principles affords a solution of all the questions presented for consideration in this case. It leaves the case entirely clear of any questions relating to an attack upon the former decree, and it involves in its consideration no question of fraud or mistake in taking the account between the parties, at the time the decree was given. The liability of the appellants arises out of omissions and defaults, which have occurred since the rendition of the decree.

In any event, whether the mortgage on lot 6 was treated as actually paid by the appellants or not, the amount found due could not have been varied a farthing from the sum specified in the decree. If the appellee had known that the mortgage was not paid, he might, or might not, have arranged to assume that, as he did the encumbrance on the Hudson residence. Whatever he might have done in that regard, would have been the result of an agreement with the appellants, rather than by force of the decree. Having paid the money to the appellants, as they demanded, and had the right to demand, and they having refused to pay their debt, as was their duty, the right of the appellee to recover the amount which the appellants' default imposed upon him,

follows from the application of plain and well settled prin-- ciples.

What has been said disposes of the questions discussed in respect to the answer and cross complaint of the appellants, as well as all other questions in the case.

The decree, which conclusively settled the amount due the appellants, was equally conclusive as to the rights of the ap-- pellee in the property then in controversy. By its terms the appellee became entitled, upon payment of the sum fixed within the time limited, to a conveyance which vested in him an absolute title to the whole of the property, free from any encumbrance placed thereon by the appellants. That he sub- sequently realized out of the sale of the property repurchased a sum more than sufficient to reimburse himself, including the amount paid to redeem lot 6 from the appellants' debt,. is no answer to the complaint, nor can that fact supply the basis of a cross action in favor of the appellants for an accounting.

The judgment is affirmed, with costs.

Filed Dec. 7, 1886; petition for a rehearing overruled Mar. 8, 1887.