[Filed November 24, 1890.]

## IDA MORRILL v. ELI MORRILL AND B. KILLEN.

COLLATERAL ATTACK—WHAT IS.—A collateral attack on a judgment or decree, is any proceeding which is not instituted for the express purpose of annulling, correcting or modifying such decree.

POSSESSION—LEGAL TITLE—TENANTS IN COMMON.—The possession of land usually follows the legal title, where no adverse possession is shown, and the possession of one tenant in common, in the absence of an ouster, will enure to the benefit of his co-tenant.

JUDGMENT—COLLATERAL ATTACK—ERRORS OF LAW.—When a court has jurisdiction of the subject matter and the parties, its judgment cannot be impeached collaterally for errors of law or irregularity in practice.

DEFENSE—FAILURE TO MAKE.—When a party to a suit has an opportunity to present his defense and neglects to do so, the decree against him is binding in a collateral proceeding.

DECREE IN PARTITION SUIT—EFFECT OF.—A decree for partition is conclusive upon the parties and privies that they were tenants in common and in possession of the land at the date of its rendition.

DOMESTIC JUDGMENT—COLLATERAL ATTACK—FRAUD.—A judgment of a court of this state having jurisdiction of the parties and subject matter, cannot be attacked collaterally for fraud, *aliunde* the record, by the parties or privies.

PARTITION SUIT—REFEREES.—Where only one referee is appointed in a partition suit, such proceeding is only an irregularity, and cannot be inquired into collaterally.

Multnomah county:   L. B. Stearns, Judge.

Defendants appeal.   Reversed.

This is a suit brought under section 504, Hill's Code, by plaintiff and respondent to quiet her title to lot No. 3, block 116, in the city of Portland.   The complaint avers that the plaintiff is the owner in fee and in the actual possession of this lot; that she derives her title thereto by good and sufficient mesne conveyances from the United States, and also by virtue of the statute of limitations.   The separate answer of defendant Killen avers that defendant Eli Morrill is the owner of the north 19 feet of this lot, and that on the 18th day of March, 1889, said Morrill executed a mortgage to him on this 19 feet to secure the payment of the sum of $1,000. The defendant Eli Morrill, after denying plaintiff's ownership in the north 19 feet of this lot, alleges that he is the owner in fee thereof; and as a further defense and by way of estoppel avers that in 1883 he instituted a suit for partition of the property described in the complaint against plaintiff Ida Morrill in the circuit court of Multnomah county; that she was duly served with process, and appeared by attorney and defended said suit; that such proceedings were had in said suit; that on June 7, 1883, a decree was duly entered by the court, adjudging and decreeing that this defendant Eli Morrill and plaintiff Ida Morrill were tenants in common and in possession of lot 3, block 116, in the city of Portland; that Eli Morrill was the owner of an undivided one-third of said lot, and said Ida Morrill was the owner of an undivided two-thirds thereof; that a partition of said lot could be made without prejudice to the rights of the parties; that said property was divided and partitioned in accordance with said decree by setting off in severalty to Eli Morrill the north 19 feet of said lot, and to Ida Morrill the south 31 feet thereof; and that said decree was duly entered in the journal of said court; and that said decree is in full force and effect.   The reply, after denying the allegations of the answer, sets forth that on March 28, 1877, a divorce suit was brought in the circuit court of Multnomah county by Eli Morrill against his

XX Or.—7.

then wife Ida, and a decree was made therein, among other things, decreeing Eli Morrill to be the owner of an undivided one-third of lot 3, block 116, and dissolving the bonds of matrimony between the parties. It then avers that Ida, soon after said decree, went into the adverse possession of said lot 3 and disseized and dispossessed the said Eli, and that ever since said date she has held it adversely. It also avers that defendant for a valuable consideration released his interest in said lot on August 9, 1879, and sets forth a copy of the alleged agreement as follows:

### "AGREEMENT.

"In consequence of mutual agreement with Mrs. Ida Morrill, I declare under oath that I withdraw my individual right of the title of an individual one-third interest in lot 3, block 116, in the city of Portland, allowed to me by law of the court. (Signed.) ELI MORRILL.

"PORTLAND, Or., August 9, 1879."

The reply then attempts to impeach the decree in the partition suit by averring that the evidence did not justify it, and no referees were appointed as required by law; that notwithstanding the failure and inability of said Eli Morrill to prove facts necessary to maintain said suit, that her attorney therein, by and with the connivance and procurement of said Eli Morrill, was wrongfully induced, pursuaded and deceived into entering into a stipulation in said suit as to such facts and in consenting to said decree of partition without the knowledge, acquiescence or consent of the plaintiff and against her instructions and directions. It then alleges said decree of partition to be a fraud upon the court and plaintiff, and that she never knew of said decree until the filing of defendant's answer in the present suit, and that she has never knowingly acquiesed therein. A demurrer was interposed in the court below to that part of plaintiff's reply alleging new matter, which was overruled. The issues so made were then referred to C. H. Carey, Esq., to take the testimony and report his findings of law and facts to the court. The findings of the referee were in favor of the

plaintiff.   Motions to confirm and set aside this report were duly filed.   The court overruled defendant's motion and sustained the motion of plaintiff to confirm said report, and a decree was thereupon entered in favor of plaintiff, and decreeing that she was the owner in fee of said lot 3, block 116, and that neither of said defendants had any right, title or interest in or to the north 19 feet of said lot.   From this decree the appeal is taken.

*J. W. Whalley,* for Appellant.

*A. H. Tanner,* and *R. R. Giltner,* for Respondent.

BEAN, J.   (After stating the facts as above.)—It is conceded by respondent that if the decree in the partition suit of *Morrill* v. *Morrill* is valid and binding on her, this case should be reversed.   Briefly, the facts concerning the partition suit are these:   In August, 1882, the defendant herein, Eli Morrill, commenced a suit for partition in the circuit court of Multnomah county, Oregon, against the plaintiff in this suit.   The complaint was in the usual form, alleging that he and plaintiff were tenants in common and in possession of lot 3 in block 116, in the city of Portland, setting out the interests of the respective parties and praying a partition thereof.   A summons being duly issued and served, the plaintiff appeared by her counsel and filed an answer, in which she denied the possession of the premises by herself and defendant, and alleged as a defense that she was then and had been since the 1st day of March, 1878, in the actual and exclusive possession of all of the property, and that her possession was not joint with that of plaintiff or any other person.

A reply being filed denying the new matter alleged in the answer, the cause was referred to a referee to report the facts and the law to the court.   In January, 1883, the parties, by their respective attorneys, appeared before the referee for the purpose of taking testimony.   The plaintiff offered in evidence a certified copy of the judgment roll in the divorce case of *Morrill* v. *Morrill,* and the following stipulation of the parties was entered into:

"It is hereby stipulated by the parties that up till the 4th of February, 1882, both plaintiff and defendant occupied the premises described in the complaint; that since that time the defendant has been in the actual, exclusive occupancy of all of said premises, and has lived there as a home, and that neither the defendant nor any person for him has actually occupied said premises or any part thereof since February 4, 1882, as a home or otherwise; that both before and since February 4, 1882, and up to the present time, both plaintiff and defendant have paid taxes and street improvements according to their respective interests. It is understood that this stipulation shall not be so construed as to affect the rights of either party as a tenant in common. It is further agreed that the referee may make personal inspection and investigation of the premises in question, and from the facts thus obtained report to the court (if this suit can be maintained)—(1) whether the property can be divided; (2) if it can, then how division shall be made; (3) if it cannot be divided, then recommend a sale."

On May 4, 1883, the referee filed his report, the findings of fact and conclusions of law being in favor of defendant, and he also reported that pursuant to the stipulation of the parties, he had made personal inspection of the premises and found that they could be divided without injury to the rights of either. The report recommended that the north 19 feet of the lot be set off to defendant and the south 31 feet to plaintiff, each portion being particularly described in the report. Motions were made to confirm and set aside this report by the respective parties to the suit.

On June 7, 1883, the court being fully advised and the counsel of the respective parties consenting thereto in open court, a decree was entered confirming said report; and it was adjudged and decreed that plaintiff and defendant were tenants in common and in possession of the property; that plaintiff was the owner of an undivided two-thirds thereof and defendant of the remaining one-third; that the premises could be partitioned according to the respective interests of

the parties without prejudice to the rights of either, and confirming the partition as made by the referee, particularly describing in said decree the portion set off to the respective parties. It is argued on behalf of respondent here that the decree in the partition suit of *Morrill* v. *Morrill* is void (1) because defendant was not in possession of the land sought to be partitioned at the commencement of the suit, and such fact it is claimed appears from the record thereof; (2) that the stipulation entered into by her attorney was without her knowledge and against her instructions and was done for the purpose of defrauding her; (3) that no referees were appointed to partition the land as by law required.

It is first important to determine whether this is a direct or collateral attack on this decree. The contention of respondent is, that it is a direct attack, and therefore no presumptions are to be invoked in order to sustain it. The complaint contains no allegations concerning this decree, but the first mention thereof is in the answer, where defendant pleads it as an estoppel. The plaintiff then seeks to avoid its effect by averring in the reply matters which she claims are sufficient to invalidate it. This is undoubtedly a collateral attack. It is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree. A collateral attack on a judgment is any proceeding which is not instituted for the express purpose of annulling, correcting or modifying such decree. (12 Am. & Eng. Ency. of Law, 177.) The fact that the parties are the same, and that the plaintiff seeks to attack the decree by the allegation of the reply, cannot change the rule or make the attack any the less a collateral one. The first objection to the validity of this decree is based upon the stipulations of the attorney, "that the defendant in the partition suit has, since February 4, 1882, been in the actual, exclusive occupancy of all of said premises, and has lived there as a home, and that neither the defendant nor any person for him has actually occupied said premises

or any part thereof since February 4, 1882, as a home or otherwise."

The contention is that a plaintiff, in order to maintain a suit for partition, must not only be a tenant in common but in the possession of the land sought to be partitioned. If he has been ousted or disseized, and his co-tenant is holding adversely to him, the suit cannot be maintained, and many authorities are cited to that effect. It is urged that this stipulation shows that defendant was not in possession of these premises at the time he commenced this suit, but had been ousted by the plaintiff long prior thereto. It may be doubted whether such a construction can be put upon the language of the stipulation, since possession usually follows the legal title, where no adverse possession is shown, and the possession of one tenant in common of the land, in the absence of an ouster, will enure to the benefit of his co-tenant. (Freeman on Co-tenancy and Partition, § 167.) "Actual, exclusive occupancy" by the defendant in the partition suit may not have been inconsistent with the title of her co-tenant, but however that may be, it was a question for the court before whom the suit was pending, and its decision, however erroneous it may have been, is binding on the parties until reversed or annulled in some proper proceeding. (Atkins v. Kinnan, 20 Wend. 241, 32 Am. Dec. 534; Voorhees v. U. S. Bank, 35 U. S. 449; Dolph v. Barney, 5 Or. 191; Woodward v. Baker, 10 Or. 491; Norton v. Harding, 3 Or. 361; Hill v. Cooper, 8 Or. 254.) After a court has acquired jurisdiction, it has a right to decide every question arising in the case, and however erroneous its decision may be, it is binding on the parties until reversed or annulled. Here, we have a competent court with admitted jurisdiction of the subject matter and the parties, with full power and authority to decide all questions arising in the case, and it is sought to impeach the validity of its decree, because, forsooth, it was mistaken, either as to the law applicable to the facts before it or to the facts themselves. BALDWIN, J., in the case of Voorhees v. U. S. Bank, supra, speaking on this

subject, says: "The error of the court however apparent can be examined only by an appellate power; and by the laws of every country a time is fixed for such examination whether in rendering judgment, issuing execution or enforcing it by process of sale or imprisonment. No rule can be made more reasonable than that the person who complains of an injury done him should avail himself of his legal remedy, in a reasonable time, or that that time should be limited by law. This has wisely been done by acts of limitations on writs of error and appeals. If that time elapses, common justice requires that what a defendant cannot directly do, in the mode pointed out by law, he shall not be permitted to do collaterally by evasion. A judgment irreversible by a superior court cannot be declared a nullity by any authority of law. If after its rendition it is declared void for any matter which can be assigned for error, only on a writ of error or appeal, then said court not only usurps the jurisdiction of an appellate court but collaterally nullifies what such court is prohibited by express statute law from even reversing. If the principle once prevails, that any proceedings of a court of competent jurisdiction can be declared to be a nullity, by any court after a writ of error or appeal is barred by limitation, every county court or justice of the peace in the union may exercise the same right from which our own judgments or process would not be exempt." We need not pursue the examination of this question any further, for the principle is so well settled that it is said to be an axiom of the law, that when a court has jurisdiction of the subject matter and the parties, its judgments cannot be impeached collaterally for errors of law or irregularity in practice. (*Cooper* v. *Reynolds*, 10 Wall. 308; *Sibley* v. *Waffle*, 16 N. Y. 180.)

On the argument of this case much stress was laid upon the effect of the alleged agreement of defendant concerning the property in dispute made in August, 1879; and it was claimed that by virtue of that agreement plaintiff became the equitable owner of this property. There are two reasons,

either of them sufficient in our opinion, why plaintiff can claim nothing by virtue of this agreement in this suit. The first is, such agreement is not alleged in the complaint or in any way referred to therein. If plaintiff intended to rely upon this agreement she should have so averred in her complaint; not having done so, she cannot aid the complaint by departing from the cause of suit stated therein and alleging another and different one in her reply. In her complaint plaintiff seeks to prevail by virtue of a purely legal title. This agreement if executed by defendant only gave her an equitable title at best. The other is, that this writing was executed, if at all, long prior to the commencement of the partition suit, and plaintiff should have availed herself of any rights it gave her in that suit. (*Neil* v. *Tolman*, 12 Or. 289.) If she neglected or failed, without some reasonable excuse, to produce all the evidence in her possession in that suit, it is now too late for her to be heard to complain. There must be an end to litigation, and where a party has an opportunity to present his defense and neglects to do so, the demands of the law require that he should take the consequences, when the judgment or decree is sought to be enforced against him in a collateral proceeding. The decree in the partition suit is conclusive between the parties as to the title to the land, and is a solemn adjudication that they were tenants in common therein. (*Edson* v. *Munsell*, 12 Allen, 600; *Hancock* v. *Lopez*, 53 Cal. 362; Freeman on Co-tenancy & Partition, § 530.) The plaintiff is estopped by that decree from showing or attempting to show that she was holding the premises adversely to the defendant or that he had no interest therein at the date of its rendition.

The next question in this case is, can the decree in the partition suit be impeached for fraud? It is claimed by respondent that the evidence and findings of the referee show that the decree was obtained by fraud and collusion between her attorney in that suit and the defendant here. It is argued with much force and learning that since

defendants rely upon the particular decree as one of the muniments of their title, plaintiff should be permitted to show if the facts are with her, that such decree was obtained by fraud and collusion between her attorney and adversary; that since fraud vitiates every transaction, even a judgment, she ought to be permitted to treat this decree as invalid when sought to be enforced or relied upon even in a collateral proceeding. This we believe is the first time this question has ever been before this court for decision. In the case of *Murray* v. *Murray*, 6 Or. 17, the court held that a judgment of a sister state could be attacked collaterally for fraud by a party when offered in evidence in the courts of this state, for the reason that the party sought to be affected thereby has no opportunity to attack it in our own courts by a direct proceeding and should not be required to go into a foreign state to do so. As we have already said, this cannot be considered a direct attack upon this judgment. No reference is made to the judgment in the complaint. No facts are alleged upon which a court could base a decree annulling the decree or judgment. The plaintiff in her complaint claims title by good and sufficient mesne conveyances from the government of the United States, and by virtue of the statute of limitations. This is not sufficient to entitle her to attack this judgment. (*U. S.* v. *Flint*, 4 Saw. 42; *Mayor* v. *Brady*, 115 N. Y. 599; *U. S.* v. *Throckmorton*, 98 U. S. 61.) It is a general rule at common law, that parties and privies to a judgment may not attack it collaterally for fraud. After a party has been duly served with process, it is his duty to see that such a judgment is not obtained against him, and if it is, he must take some proper proceedings to have it annulled. As long as it remains in full force and effect, the parties cannot treat it as invalid unless such invalidity appears upon the face of the judgment. It is true, fraud vitiates every transaction into which it enters, even a judgment, but such fraud must be made to appear in some appropriate proceeding known to the law. The statute points out ample methods by which a

party may be relieved from such a judgment,—such as a new trial; review for error of law; an application to be relieved therefrom. And beyond the methods provided by statute, courts possess inherent powers, as has been said, "to an almost unlimited extent, to redress wrongs by modifying or setting aside judgments obtained by fraud or mistake." These methods, however, must be resorted to. They give no countenance to the idea that a judgment wrongfully obtained may be completely ignored and the rights of the parties again inquired into in a collateral proceeding. (Freeman on Judgments, § 334; *Davis* v. *Davis*, 61 Mass. 395; *Murray* v. *White*, 58 Vt. 45; *Granger* v. *Clark*, 22 Me. 128; *B. & W. Corp.* v. *Sparhawk*, 1 Allen, 448, 79 Am. Dec. 750; *Demerit* v. *Lyford*, 27 N. H. 541; *Krekeler* v. *Ritter*, 62 N. Y. 372; *Weiss* v. *Guerineau*, 109 Ind. 438; *Callaghan* v. *Griswold*, 9 Mo. 457; *Mason* v. *Messenger*, 17 Iowa, 261.) From these and many other authorities that could be cited, we take the law to be that a judgment of a court of this state having jurisdiction over the subject matter and the parties, cannot be questioned collaterally for fraud *aliunde* the record by the parties or privies.

The case relied upon by the respondent as announcing a contrary doctrine is *Mandeville* v. *Reynolds*, 68 N. Y. 528. This was an action on a judgment, the defense to which was based upon a satisfaction of the judgment of record, and upon an order of court ratifying that satisfaction. The plaintiff offered to show that the entry upon the docket and the order was obtained by fraud and collusion. The court held that such evidence was competent, and in the opinion there are statements to the effect that a judgment obtained by fraud could be attacked collaterally. This decision was made under the reform code of procedure of the state of New York, which permits equitable defenses to be pleaded in actions at law, and the court says: "The court acts upon the matters involved in the action, now, in a double capacity: as a court of law and a court of equity. As a court of equity it meets the questions of the validity of the judgment, not

as one of law, but as of equity, and takes hold of the facts offered to it, not as a collateral attack upon the judgment but as a direct assault, which by the changing nature of the suit and trial has become the main question and legitimately before it for trial." In this state the distinction between proceedings at law and in equity is still maintained. (*Burrage* v. *B. G. & Q. M. Co.* 12 Or. 169.) Authorities under the reform codes of procedure are, therefore, not applicable here.

We have so far treated this question on the theory that the evidence shows the decree to have been obtained by fraud, and our views as to the law render it unnecessary to examine the evidence; but in passing we deem it proper to say that we cannot agree with counsel for respondent in their construction of the testimony. We think the evidence signally fails to show that the decree was obtained by fraud or collusion. It is also claimed that the stipulation in the partition suit was entered into by plaintiff's attorney without her knowledge or consent. This claim is not sustained by the testimony. It is true plaintiff says she knew nothing about the proceedings in the suit; but the attorney who appeared for her testifies that she was informed of and consented to every step taken therein, and the referee who made the partition says that she was present when he was examining the premises for the purpose of partitioning the same, that she knew what he was doing and was consulted about the matter.

It is also claimed the decree is void because the partition was made by only one referee and not three as provided by statute. At most this was but an irregularity and cannot be inquired into in this suit. (*Cole* v. *Hall*, 2 Hill, 625; *Kinnier* v. *Kinnier*, 45 N. Y. 535, 6 Am. Rep. 132.)

It follows, therefore, that the decree of the court below must be reversed and a decree entered here in favor of defendants.