Argued March 6, decided March 18, 1913.

### HARPOLD v. ARANT.

(130 Pac. 737.)

**Taxation—Tax Sales—Place—"Courthouse Door."**

A sheriff's return on an execution for the sale of real property for taxes, reciting that the property was sold "at the front door of the courthouse," showed a sufficient compliance with Section 2826, Hill's Ann. Laws, providing that all sales for delinquent taxes on real estate must be made "at the courthouse door."

From Klamath: HENRY L. BENSON, Judge.

This is a suit by A. D. Harpold against W. F. Arant to determine an adverse interest in certain real property in Klamath County, Oregon. The circuit court rendered a decree in favor of defendant, and the plaintiff appeals.

.AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John Irwin.*

For respondent there was a brief and an oral argument by *Mr. C. C. Brower.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by the plaintiff from a decree dismissing his suit to determine an adverse title to vacant and unimproved real property in Klamath County, Oregon. The facts are that on July 2, 1898, Roscoe R. Guilliams obtained a warranty deed for the northeast quarter of the southeast quarter of section 11, in township 39 south, of range 11 east, of Willamette Meridian. This land having been assessed to the owner, who failed to pay the tax imposed, the sheriff of that county published a notice to the effect that by virtue of a warrant attached to certain delinquent tax rolls of that county, commanding him to levy upon the goods and chattels of the tax-

payers named, and if none could be found then upon the
real property described in such rolls or so much thereof
as might be necessary to satisfy the amount of taxes
charged thereon, with costs and expenses, and, being
unable to find any goods or chattels belonging to the tax-
payers therein named, he had levied upon the real prop-
erty set forth in such rolls, including that of R. R. Guil-
liams, tax, $2.85, describing the land as hereinbefore set
forth, and that on Saturday, December 28, 1901, at the
hour of 10 o'clock A. M., "at the front door of the court-
house" in said county and State, he would sell the above-
described premises at public auction to the highest bidder
for cash, subject to redemption, to satisfy taxes, costs,
and accruing costs. The return of the sheriff is to the
effect that at the time and place and in the manner stated
in the notice he offered the premises for sale in separate
parcels to the highest bidder for cash, and sold the same
to W. F. Arant the defendant herein, for $4.15, which
was the whole price bid, being for taxes, $2.82, and costs,
$1.30, on the property of R. R. Guilliams, leaving in his
hands a surplus of three cents. No redemption from such
sale having been made or tendered, the sheriff executed
to the purchaser a deed to the real property, which instru-
ment was recorded December 4, 1905. Four months and
14 days thereafter, to wit, on April 18, 1906, A. D. Har-
pold, the plaintiff herein, commenced an action against
Ross Guilliams in the circuit court of Klamath County,
Oregon, to recover $1,277, the amount of the latter's
promissory note, and $150 as a reasonable attorney's fee.
At the same time a summons was issued and returned by
the sheriff with an indorsement thereon to the effect that
he was unable to find the defendant within the State and
county. Harpold also filed with the clerk an affidavit for
an attachment and an undertaking therefor, whereupon
a writ of attachment was issued, but the transcript does
not contain a copy thereof nor of the return that should

have been made thereto. The command of the writ and what the sheriff did in obedience thereto can only be inferred from Harpold's affidavit for the service of summons by publication, filed April 19, 1906. The entire sworn declaration in relation thereto reads as follows:

"That on the 19th day of April, 1906, a writ of attachment was duly issued out of said circuit court in this cause, directed to the said sheriff and commanding him to attach and safely keep all property of the said defendant; Ross Guilliams, within Klamath County, not exempt from execution, or so much thereof as might be necessary to satisfy the plaintiff's demand, viz., the sum of $1,277 and $150 attorney's fees and costs and disbursements of said action; that said writ of attachment was placed in the hands of said sheriff on the 19th day of April, 1906, for execution; that the property was attached by said sheriff on the 19th day of April, 1906, the northeast quarter of the southeast quarter, section 11, township 39 south, range 11 east, W. M., in Klamath County, Oregon."

The complete part of Harpold's affidavit with regard to the effort that had been made to find Guilliams within the State and to determine his place of residence is as follows:

"That said defendant cannot be found within the State of Oregon after due diligence, and that diligent search and inquiry has been made by this affiant of persons most likely to know of the whereabouts of said defendant, Ross Guilliams, as follows, to wit: On April 11, 1906, affiant inquired of J. C. Rutenic of Klamath Falls, Oregon, and the said J. C. Rutenic informed the affiant that the whereabouts of the said defendant, Ross Guilliams, was not known to him, the said J. C. Rutenic. That affiant likewise inquired of Crede McKindry, J. W. Brown, and Walter Broadsword, of Bonanza, Oregon, and all of said persons informed affiant that they did not know where the said defendant was, and also stated that they did not think he was within the State of Oregon. That I have repeatedly inquired of the postmaster at Bonanza, Oregon, the place where the said defendant, Ross Guilliams, formerly resided and where he was accustomed to get his mail, and was informed by the said

postmaster that he did not know where the said defendant, Ross Guilliams, is. That all the parties of whom the affiant inquired, and who are mentioned herein, were formerly neighbors and acquaintances of the said defendant. Affiant therefore says that personal service of said summons cannot be made on said defendant, Ross Guilliams, and he asks for an order that service of summons may be made by publication thereof in the Klamath Falls Express, a weekly newspaper printed and published at Klamath Falls, Oregon, and a paper of general circulation and one most likely to reach defendant, Ross Guilliams. That said Ross Guilliams is a necessary party to said action. That said defendant is not now within the State of Oregon and that he has departed therefrom for the purpose of defrauding his creditors or to avoid the service of summons in this case. That said Ross Guilliams has a large number of creditors in this county and State, and that said Ross Guilliams has departed therefrom for the purpose of defrauding them. That this affiant is a creditor of the said defendant, Ross Guilliams, as will more fully appear from the cause of action hereinbefore set forth and to which reference is hereby made."

Based upon such affidavit, the judge of the court on September 12, 1906, or 146 days after the sworn declaration was filed, made an order reciting the substance of the affidavit and directing service of the summons by publication in the Klamath Falls Express, a weekly newspaper published in that county, once a week for six consecutive and successive weeks, the first publication to be made on Tuesday, September 20, 1906, and the last on November 1st of that year. The affidavit of the printer shows that the summons was published in the designated paper in its regular successive issues, beginning September 27, 1906, a week later than ordered, and ending at the time prescribed. Attached to the affidavit of the printer is a copy of the summons printed, which process required Guilliams to appear and answer the complaint on or before November 1, 1906, and as far as material herein the printed copy reads as follows:

"This summons is published in the Klamath Falls Express, a weekly newspaper printed and published at Klamath Falls, Oregon, by order of Hon. Henry L. Benson, Judge of the First Judicial District of Oregon, and dated September 27, 1906. The first publication to be made on Thursday, the 27th day of September, 1906, and the last publication to be made on Thursday, the 1st day of November, 1906."

Founded on such proof, the court on December 4, 1906, determined that Guilliams was in default, and on the next day further found that his real property hereinbefore described had been attached, and thereupon gave judgment in favor of Harpold in the sums demanded in the complaint and also ordered the land so attached, or so much thereof as might be necessary, to be sold in the manner prescribed by law to satisfy the sums so awarded and the costs and disbursements of the action, and the accruing costs. An execution was issued on the judgment and pursuant to the command thereof the sheriff's return indorsed upon the writ shows that, after giving the required notice, he, on April 15, 1907, sold the real property in question "at the front door of the courthouse" in Klamath Falls to A. D. Harpold, the plaintiff herein, for $1,442.

W. F. Arant, the defendant herein, as plaintiff, commenced a suit April 17, 1907, against Roscoe R. Guilliams in the circuit court of Klamath County, Oregon, to quiet his title to the demanded land under the tax sale. Harpold, however, was not made a party. In the suit last mentioned the court on June 17, 1907, found that the summons had been duly served upon Guilliams by publication for six successive weeks in the Evening Herald, a newspaper of general circulation published in Klamath Falls, in that county, the first publication having been made April 19, 1907, and the last May 31st of that year, as appeared by the affidavit of the printer of that paper, all done in pursuance of and in conformity

with the order for the publication thereof, and that the
time for answering having expired, and no appearance
having been made by Guilliams, it was considered that
he was in default, and thereupon a decree was given for
Arant as prayed for in his complaint, to the effect that
Guilliams had no estate or interest in the real property
in question and enjoined him from asserting any claim
thereto adverse to that of Arant.    In the case of Harpold
against Guilliams the sale of the real property so made
upon execution was confirmed, and, no redemption having
been made or tendered, the sheriff on November 17, 1909,
executed a deed of the premises to the plaintiff in that
action, reciting in the deed that the sale of the land was
made at public auction "in front of the courthouse in
Klamath Falls, in said County of Klamath."

The foregoing is a brief resume of the means whereby
the respective parties assert a title to the real property
involved herein.   Predicated upon such evidence the court
found that the summons in the case of Harpold against
Guilliams did not correspond with the order of the court
therefor; that the affidavit for the publication of process
in that case did not state that Guilliams was the owner
of any real property within that county, or affirm that
his postoffice address was unknown; that the order of
publication did not direct a copy of the complaint and
of the summons to be mailed to his last known address;
that the real property was publicly sold for delinquent
taxes to Arant, the defendant herein, who thereafter
secured a sheriff's deed pursuant to such sale; that the
tax proceedings and the deed executed in  conformity
therewith were regular on their face; and that Arant
had secured a decree against Guilliams quieting his title
to the real property.   Based on these findings, the court
deduced as conclusions of law that the judgment so
obtained by Harpold was void for want of jurisdiction
of the subject-matter and of the person of Guilliams, that

by reason thereof the sale of the land upon execution
and the deed made in pursuance thereof were likewise
void, and that Harpold was not the owner of the real
property hereinbefore described or of any interest there-
in, or entitled to the possession thereof; but that Arant
was the owner in fee of the land and entitled to its
possession, and, having given a decree in accordance with
such findings, the plaintiff undertakes to review such
action.

It is argued by plaintiff's counsel that since it appears
from an inspection of the sheriff's return, indorsed upon
the tax warrant, that the real property so assessed to
Guilliams was sold for delinquent taxes "at the front
door of the courthouse," the sale was for that reason void,
and, such being the case, an error was committed in ren-
dering the decree now brought up for consideration. It
is further insisted by plaintiff's counsel that though there
may not have been a literal compliance with all the re-
quirements of the statute in respect to the affidavit for
the service of the summons by publication, or the order
therefor, or the proof thereof, the trial court having
originally held in the case of Harpold against Guilliams
that the means adopted for that purpose were sufficient
to confer jurisdiction of the subject-matter and of the
person, the determination thus reached is controlling in
the cases at bar, in which the defense is a collateral
attack upon plaintiff's title to the land, and, this being
so, errors were committed in concluding that the judg-
ment rendered in that action was void for any reason,
and in denying the relief prayed for in the complaint
herein.

As the defense interposed was not maintained at the
time, or in the manner, or by the person authorized by
law to avoid or correct the judgment given in the case of
Harpold against Guilliams, it will be taken for granted,
without deciding the question, that the defense is not a di-

rect attack, and for that reason it can be successful only upon showing either that Guilliams was divested of his title by the tax proceedings before the land was attached, or by proving that the judgment in the case of Harpold against Guilliams was void for want of power in the court to proceed in that action. *Morrill* v. *Morrill,* 20 Or. 96 (25 Pac. 362: 11 L. R. A. 155: 23 Am. St. Rep. 95).

It will be remembered that the tax deed executed to Arant upon a sale of the land for delinquent taxes was recorded December 4, 1905, and that the real property was not attached until April 19, 1906. If therefore the tax proceedings were sufficient to divest Guilliams of his legal title, no lien upon the premises nor any estate therein could have been created by the attachment.

The law in force December 28, 1901, when Guilliam's land was sold for delinquent taxes,. as far as involved herein, was as follows:

"All sales for delinquent taxes, as provided in this chapter, upon real estate, must be made as otherwise made in selling real estate upon execution, at the courthouse door." Section 2826, Hill's Ann. Laws.

The plaintiff's counsel in support of the principle contended for cites the case of *Rubey* v. *Huntsman,* 32 Mo. 501 (82 Am. Dec. 143), where a statute of Missouri required sales of land for delinquent taxes to be made "before the courthouse door," and, it appearing that a sale of land was made for delinquent taxes within the courthouse, it was held that the sale was void.

In the case at bar, the statute having commanded a sale of land for delinquent taxes to be made "at the courthouse door," was the sale herein void because it was made "at the front door of the courthouse"? Does the transposition of the language of the enactment and the employment of the word "front" to qualify the word "door" render the sale ineffectual? As we view the statute, since the sale of land for delinquent taxes is required to be held "at

the courthouse door," the word "the" as thus used fairly implies the front door of that building, and not a side or any other door thereof. The purpose of the enactment evidently was to have the sale made in the most public place at the county seat, and, since such place is the space "at the front door of the courthouse," where persons visiting that building to transact business with the county officers or for any other purpose on the day appointed for the sale of land for delinquent taxes, they would necessarily see and hear what was transpiring, and, since no other place is as well calculated to attract the attention of visitors at the courthouse, the use of the word "front" and the change of the arrangement of the words, when their intended meaning remains, did not render the sale of the land for delinquent taxes void for that reason. Indeed, the sale of the land to the plaintiff herein upon execution was advertised by the sheriff to be made at the same place, and the return of that officer upon the writ of execution shows that the sale was conducted thereat.

The foregoing is the only objection of importance made to the tax proceedings, and, believing that it is not sufficient to defeat the title of Arant, it follows that no lien was created upon the premises by the attachment, and hence it is unnecessary to consider whether or not the judgment in the case of Harpold against Guilliams is void for any reason.

The decree should be affirmed, and it is so ordered.

AFFIRMED.