## DICKEY

*v.*

### THE BALTIMORE INSURANCE COMPANY.

1813.

Feb.   13th.

---

*Present.....All the Judges, except* TODD, J.

ERROR to the Circuit Court for the district of
Maryland, in an action, on a policy of Insurance upon
the ship Fabius, " at and from New York to Barbadoes,
" and at and from thence to Trinidad, and *at and from*
" *Trinidad,* back to New York."

A policy of in-
surance on a
vessel, " at
and from," an
island, pro-
tects her in
sailing from
port to port of
the island to
take in a car-
go.

The ship proceeded to Barbadoes, and from thence
to the port of Spain, in the island of Trinidad, being
the only port of entry in the island.   Having taken in
part of her return cargo, she sailed from thence for
Port Hyslop, in the same island, for the residue.   In
the way she was lost by the dangers of the seas.

On the trial below, the opinion of the Court was in
favor of the Defendants, and the Plaintiff took his bill
of exceptions, and brought the case up by writ of error.

HARPER, *for the Plaintiff in error,* stated, that the
only question was,

Whether the terms ", *at and from Trinidad,*" authoriz-
ed the ship to sail from one port of the island to ano-
ther port of the same island, to complete her cargo ?

DICKEY   · To show that she was so authorized, he relied on the
  v.     case of *Bond v. Nutt,* *Cowp.* 601, and *Thellusson v.*
BALTI-   *Ferguson, Doug.* 346. *Marshall.* 255. 257. *(Boston ed.)*
MORE
INS. CO.   PINKNEY, *Attorney General, contra.*

The opinion of the Court below was founded upon the
reason of the thing, and upon the idea that the late
English cases were not authority.

The vessel was not within the policy while sailing
from port to port in the island: She was lost on the
high seas, and was not protected by the policy, unless
she was justified by some usage of trade. But no such
usage was proved. In the case of *Bond & Nutt,* the ves-
sel was a general ship, and the usage of the trade was
to take goods for several different ports in the island
of Jamaica. That island has many ports of entry—
Trinidad has only one. There is no case in which a
vessel has been permitted to depart from a port, and re-
turn to it again, under such a policy. She was not li-
terally *at* the island. Analogy is against the doctrine,
and so is the reason of the thing.

HARPER, *in reply.*

In the cases cited by Marshall, there is no allusion to
the course or usage of the trade. Nor does the Court
lay any stress upon the fact, that there were many ports
of entry in Jamaica. Although there was only one port
of entry in Trinidad, yet there were other ports at
which they might in fact take in a cargo.

*Feb. 17th....*MARSHALL, *Ch. J.* delivered the opinion
of the Court as follows ·

This action was brought on a policy, insuring the
*Fabius* at and from New York to Barbadoes, and at
and from thence to the island of Trinidad, and at and
from Trinidad back to New York. The Fabius arrived
at the port of Spain, in the island of Trinidad, on the
21st of October, in the year 1806, where she remain-
ed until the 5th of December, when she sailed, under
a special license from the proper authorities, for fort
Hyslop, another port in the island, for the purpose of pro-

curing and taking in a part of her return cargo, and with a view of returning to the port of Spain, that being the only port in the island of Trinidad at which vessels, arriving from other places, were permitted to enter, or from which those destined on foreign voyages were permitted to clear. While on her voyage to fort Hyslop, the Fabius was lost by the danger of the seas; and the question is, whether this loss is within the policy?

Were this a case of the first impression,—were it to be decided for the first time on the intention of the parties to be collected solely from the words of the contract, some contrariety of opinion might undoubtedly be looked for, and it is uncertain what might be the opinion of the Court.

Strictly speaking a vessel is not *at* an island while sailing from one port to another of the same island; yet it is difficult to resist the persuasion, that something more is meant by an insurance at and from an *island*, than by an insurance at and from a *port*. The words, at and from an island, and at and from a port, are not synonimous, and yet in effect the same meaning would often be given to them, if the privilege of sailing from one port to another, for the purpose of completing the cargo, should not be granted by the policy. An insurance to an island may terminate at the first port, and the expression may be adopted from the uncertainty at what port the vessel insured may first arrive; but it seems difficult to put any other construction on an insurance at and from an island, or to assign any other motive for the risk being so described, than that it is a license to use the different ports of the island, for the purpose of obtaining the return cargo. This particular policy furnishes strong reason for this construction. It is difficult to read it without feeling a conviction that the intention of the contract was to ensure the whole voyage from and to New York, and to have the liberty of the islands of Barbadoes and Trinidad. There being but one port in the island of Trinidad, at which a vessel was permitted to enter or clear, takes away every inducement for inserting in the policy the words at and from the island of Trinidad, rather than the words at and from the port of Spain, in the island of Trinidad, unless those words secure the liberty of going to other

ports, for the purpose of completing the cargo, and of returning to the port of Spain, to clear out for New York.

But the words of this policy are not now to receive their first construction. In *Camden v. Cowley, mentioned 1 Marshall,* 166, a ship was insured from London to Jamaica generally, and by a subsequent policy she was insured *at and from Jamaica to London.*

The ship having touched and staid for some days at one port of Jamaica, was lost in coasting the island; but before she had delivered all her outward cargo at the other ports of the island.

In an action on the homeward policy, the claim of the insured on the underwriters was resisted, not on the principle that the words at and from did not imply a permission to use all the ports of the island, not on the principle that sailing from one port to another was a deviation, but on the principle that the risk on the outward policy had not terminated, and that consequently the risk on the homeward policy had not commenced when the loss happened.

A verdict was found against the underwriters, and a new trial was refused.

In *Bond v. Nutt,* the insurance was made on a ship at and from Jamaca to London, warranted to sail before the first of August, 1776. The ship sailed from St. Anns in Jamaica, on the 26th of July, for Bluefields, also in Jamaica, in order to join a convoy there. She was detained at Bluefields by an embargo, until the 6th of August, when she sailed with the convoy, but being separated from it, was captured. On this policy a verdict was given in favor of the underwriters, under the direction of Lord Mansfield, and a motion for a new trial was resisted on two grounds.

1st. That a departure from St. Anns, was not a departure from Jamaica.

2d. That going to Bluefields, was a deviation, that being out of the course of the voyage from St. Anns to London.

After great consideration, the Court was unanimously of opinion in favor of the motion.

Lord Mansfield in giving his opinion, said, " as nei- " ther party knew from what part of the island the ship " would sail, they used the words at and from Jamaica, " which protected her in going from port to port, till " she sailed." He also said, " had the insurance been " at and from St. Anns" the going round the island to " Bluefields, would have been a deviation."

In *Thelusson v. Furguson,* an insurance was made " at and from Gaudaloupe to Havre, warranted to sail on or before the 31st December." The vessel took in her cargo at *Point Petre* in Gaudaloupe, and for the purpose of obtaining convoy, sailed on the 24th of October, to Basseterre, where there is no port, but only an open road. She was there detained till the 10th of January, when she sailed with convoy, but was captured on the return voyage.

The Plaintiffs obtained a verdict. A motion was made for a new trial, which was refused. Lord Mansfield said, " under an insurance" at and from such a place as Gaudaloupe or Jamaica, the word " at" comprises the whole island, and under that word, the ship is protected in going from port to port, round the coast of the island.

The underwriters not being satisfied with this decision, another action was afterwards brought on the same policy against *Staples,* also an underwriter : But upon that action, the only point insisted on, was that the vessel had not sailed by the stipulated day.

It appears then to be the settled doctrine of the Courts of England, that an insurance " at and from an island" such as those in the West Indies generally, insures the vessel while coasting from port to port of the island, for the purpose of the voyage insured. It is dangerous to change a settled construction on policies of insurance.

It is the opinion of this Court, that the Circuit Court erred in not giving the instruction prayed for by the

DICKEY

*v.*

BALTIMORE INS. CO.

DICKEY
v.
BALTI-
MORE
INS. CO.

counsel for the Plaintiff, and that the judgment be reversed, and the case remanded to that Court with directions, to give the instructions prayed for by the Plaintiffs, as stated in the bill of exceptions filed in the cause.