## HANDLEY v. JACKSON.

### (50 Pac. 915.)

1. EQUITY— ENJOINING EXECUTION.— A court of equity has jurisdiction to restrain the enforcement of an unconscionable judgment procured through fraud, or unavoidable accident, or excusable mistake.

2. GROUND OF EQUITABLE RELIEF.— The party invoking such jurisdiction must not only show some adequate ground of interference with the judgment, but must also disclose a meritorious and sufficient defense to the law action, or at least to some substantial part thereof.

3. UNAUTHORIZED APPEARANCE OF ATTORNEY— EVIDENCE.— In a proceeding to restrain the enforcement of a judgment on the ground that the only appearance of an unserved defendant was by an unauthorized attorney, it is competent to hear evidence aliunde, offered for the especial purpose of rebutting the presumption of authority in the attorney.

4. EQUITABLE RELIEF AGAINST JUDGMENT— APPEARANCE BY UNAUTHORIZED ATTORNEY.*—The enforcement of a judgment dependent upon the appearance of an unauthorized attorney for a party who was not served with summons may be restrained in equity, irrespective of whether the attorney is responsible financially, or acted by collusion with the other party.

5. RATIFICATION.— A judgment rendered against a defendant under an unauthorized appearance by attorney is not ratified by a conditional but unaccepted offer to pay a certain sum in full satisfaction of the judgment.

6. RES JUDICATA— JUDGMENT.— A judgment is conclusive only on parties and privies, and after a party has had a day in court, from which it

*NOTE.— The authorities as to the effect of a judgment obtained upon an unauthorized appearance by an attorney are reviewed in extensive notes to *Williams* v. *Johnson* (N. C.), 21 L. R. A. 848, and *Little Rock Railway Company* v. *Wells* (Ark ), 54 Am. St. Rep. 246.— REPORTER.

follows that where several persons are sued but only part of them are brought in, a judgment between the plaintiff and such defendants cannot bind the defendants who did not participate therein.

From Yamhill: HENRY H. HEWITT, Judge.

Charles Handley seeks to restrain the sale of certain real property of his situate in Yamhill County, about to be sold under and by virtue of an execution issued out of the Circuit Court of the State of Oregon for Washington County upon a judgment therein given and rendered in an action at law in favor of the defendant Ellen L. Jackson and against plaintiff and one T. B. Handley. The action was upon a joint and several promissory note executed by the said Charles and T. B. Handley to W. R. Jackson, who indorsed the same to Ellen L. Jackson, the defendant herein and plaintiff in said action. The present bill alleges that Ellen L. Jackson held said promissory note in trust for W. R. Jackson by voluntary indorsement and transfer without consideration; that she began said action against this plaintiff and T. B. Handley, but that no summons was ever served upon this plaintiff, and that he never had any notice or knowledge whatever of the pendency thereof, or that the same had been instituted, until long after the rendition of judgment therein; that said T. B. Handley, who is an attorney of said court, appeared in said action as the attorney for plaintiff, but that such appearance was wholly unauthorized by plaintiff, and without his knowledge, direction, or consent. It is also alleged that the note had been fully paid and discharged prior to the commencement of said action. A journal

entry in the original action overruling a demurrer recites that the plaintiff appeared therein by attorney, and this is the only finding of the court touching his appearance in the action disclosed by the record. The decree being for plaintiff, defendants appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Thos. H. Tongue.*

. For respondent there was a brief over the names of *J. E. Magers* and *James McCain,* with an oral argument by *Mr. Magers.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing language, delivered the opinion of the court.

1. The principal contention of defendants is that, inasmuch as this suit was not instituted for the express purpose of annulling, correcting, or modifying such judgment, the attack thereon is collateral; and hence, being the judgment of a court of general jurisdiction, it was incompetent to impeach, by evidence hehors the record, the finding of said court that the defendant had appeared by attorney, which involves the presumption that the court also and necessarily found that the attorney had the requisite authority to enter such appearance. There was some controversy at the argument touching the nature of the suit in this regard, and it may be considered as collateral under the generally accepted definition of a collateral attack, but it is not necessary for us to determine the

question here.   Let it suffice to say that there is a
well-established and clearly-defined equitable jurisdic-
tion which will enable courts of equity to restrain the
enforcement of an unconscionable judgment or decree
procured through fraud, or through some unavoidable
accident, or excusable mistake of the defendant in the
action or suit.   Mr. Pomeroy, under title, "To Re-
strain Actions or Judgments at Law," states the doc-
trine as follows: "That where the legal judgment was
obtained or entered through fraud, mistake, or acci-
dent, or where the defendant in the action, having a
valid legal defense on the merits, was prevented in
any manner from maintaining it by fraud, mistake, or
accident, and there had been no negligence, laches, or
other fault on his part, or on the part of his agents,
then a court of equity will interfere at his suit, and
restrain proceedings on the judgment which cannot
be conscientiously enforced": 3 Pomeroy's Equity
Jurisprudence, § 1364.   Chief Justice MARSHALL rec-
ognizes it in the following language: "It may safely
be said that any fact which clearly proves it to be
against conscience to execute a judgment, and of
which the injured party could not have availed him-
self in a court of law, or which he might have availed
himself at law, but was prevented by fraud or acci-
dent, unmixed with any fault or negligence in himself
or his agents, will justify an application to a court of
chancery ": *Marine Insurance Company* v. *Hodgson*,
7 Cranch, 331, 336.   And in further support thereof,
see *Hendrickson* v. *Hinckley*, 58 U. S. (17 How.), 443;
*Brown* v. *Buena Vista County*, 95 U. S. 157; *Crim* v.
*Handley*, 94 U. S. 652; *Phillips* v. *Negley*, 117 U. S. 666

(6 Sup. Ct. 901); *Wagner* v. *Shank*, 59 Md. 313; *Given's Appeal*, 121 Pa. St. 260 (6 Am. St. Rep. 795, 15 Atl. 468); *Tomkins* v. *Tomkins*, 11 N. J. Eq. 512; *Bryant* v. *Williams*, 21 Iowa, 329. Mr. Freeman says: "The judgment complained of is permitted to stand, and the court of equity merely inquires whether there are any equitable circumstances requiring it to prevent the person in whose favor the judgment was recovered from enforcing or taking advantage of it." See elaborate and well-considered note to *Morrill* v. *Morrill*, 20 Or. 96 (23 Am. St. Rep. 95–117; 25 Pac. 362), and 2 Freeman on Judgments, § 485; also *Martin* v *Parsons*, 49 Cal. 94. So that, with this understanding of the jurisdiction and its exercise, it can make no appreciable difference whether such a suit be regarded as a direct or collateral attack upon the judgment.

2. In general, the party invoking the jurisdiction must not only show some adequate ground of interference with the judgment, but must also disclose a meritorious and sufficient defense to the law action, or at least to some substantial part or portion thereof: *Piggott* v. *Addicks*, 3 G. Greene, 428 (56 Am. Dec. 547); *Dunklin* v. *Wilson*, 64 Ala. 162; *Taggart* v. *Wood*, 20 Iowa, 236; *Sauer* v. *City of Kansas*, 69 Mo. 46; *Reeves* v. *Cooper*, 12 N. J. Eq. 223; *Stokes* v. *Knarr*, 11 Wis. 389; *Colson* v. *Leitch*, 110 Ill. 504; *Tomkins* v. *Tomkins*, 11 N. J. Eq. 512; *Parsons* v. *Nutting*, 45 Iowa, 404; *Harnish* v. *Bramer*, 71 Cal. 155 ( 11 Pac. 888). Although some authorities maintain that, where judgment has been entered without service of process, and no jurisdiction having been acquired over the person, appropriate relief will be granted without inquiry

touching the merits of the original claim: *Bowen* v. *Allen*, 113 Ill. 54 (55 Am. Rep. 398); *Great West Mining Company* v. *Woodmas Mining Company*, 12 Colo. 46 (13 Am. St. Rep. 204, 20 Pac. 771). But, however this may be, the allegations of the complaint herein bring the plaintiff fairly within the requirements of the generally accepted rule above stated.

3. It is perfectly competent in such a proceeding to hear evidence aliunde, offered for the especial purpose of negativing or overcoming the presumption of authority in the attorney to enter the appearance of an unserved defendant whom it is sought to conclude by the record: Weeks on Attorneys at Law, § 202; *Harshey* v. *Blackmarr*, 20 Iowa, 161 (89 Am. Dec. 520); *Bryant* v. *Williams*, 21 Iowa, 329; *Shelton* v. *Tiffin*, 47 U. S. (6 How.), 163.

4. The rule formerly obtained in England, and in some of the states of the Union, that an appearance by an attorney for a party without his sanction or authority was deemed sufficient for the court, which would look no further, but would proceed, and leave the party to his remedy against the attorney, unless he was irresponsible, or his appearance was through procurement or collusion with the adverse party: *Latuch* v. *Pasherante*, 1 Salk. 86; *Denton* v. *Noyes*, 6 Johns. 296 (5 Am. Dec. 237); *Bunton* v. *Lyford*, 37 N. H. 512 (75 Am. Dec. 144). However, the rule in nearly, if not all, those jurisdictions has latterly been much qualified, and disabused of its ancient rigor. But by the current of the more modern authorities it has been discarded as void of sound reason for its support: Judge DILLON in *Harshey* v. *Blackmarr*, 20 Iowa,

161 (89 Am. Dec. 520), very ably demonstrates the injustice of the rule. He says: "It obliges a person to be bound by the unauthorized act of a mere stranger. It binds him by a judgment of a court without a day in court. It relieves the other party of a duty which, in reason, belongs to him, viz., to serve his process, and to see, at his peril, that his adversary is in court. And it carries out this unsoundness by compelling the wrong party to look to the attorney. True, reason and logic would say, if an attorney appeared for me without my knowledge or authority, express or implied, I should not be bound by the act if never ratified or promptly disavowed, and if the adverse party, being ignorant of the want of authority, and carelessly omitting to serve process, or to require the attorney to show his authority, has been damaged, he, and not myself, should be the one to look to the attorney." The inexorable logic of this great jurist has had its effect, so that there is now no longer any doubt but that the enforcement of a judgment obtained and resting upon the unauthorized appearance of an attorney for a party not served may be restrained in equity, irrespective of the question whether the attorney is responsible or irresponsible, or acted by procurement or collusion with his antagonist: *Parsons* v. *Nutting*, 45 Iowa, 404; *Newcomb* v. *Dewey*, 27 Iowa, 381. As to whether such a judgment is void, or voidable only, it is not within the scope of the case at bar for us to determine. It is sufficient for the present purposes that it is either.

5. The evidence is strong and clear that T. B. Handley appeared in the action for Charles Handley,

and, having so appeared, filed a separate answer in his behalf, without his knowledge or consent, and that no service of summons was ever had upon the latter. Indeed, Charles Handley had no knowledge whatever that the action had been commenced, or of the judgment having been obtained and entered against him, until notified some ten or twelve days thereafter by the attorney for Mrs. Jackson. True, Handley made a conditional offer to pay a stated sum in full satisfaction of the judgment and costs, when so notified; but this was not accepted, and an execution was at once issued. The offer, unaccepted, was not a ratification of the judgment rendered against him under the unauthorized appearance. The suit to enjoin was commenced before the condition of any of the parties had changed, and there was no laches or lack of diligence in the plaintiff herein in ascertaining his rights and asserting them when fully understood.

As it pertains to the remaining facts in the case, the court below found that Ellen L. Jackson was the holder of the note sued on in the Washington Circuit Court in trust for W. R. Jackson, and that the same had been fully paid, satisfied, and discharged prior to the commencement of the action thereon; and we believe, after a careful consideration of all the evidence, that these findings are supported by the proof. These considerations affirm the decree of the court below, and it is so ordered.

AFFIRMED.

ON REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

6.   Since filing the opinion in this case the defendants filed a motion for rehearing based upon a question alluded to in the argument of counsel, but not discussed in the briefs, and it is now insisted that it is vital, and ought to be settled.   It is claimed that the judgment in the case of Jackson against T. B. and Charles Handley is res adjudicata, and binding upon Charles Handley, even though he did not appear in the action, because the payments which it is alleged discharged the obligation were made by T. B. Handley; that is to say, that Charles Handley, by claiming the benefit of such contractual relations between T. B. Handley and Jackson, thereby puts himself in privity of contract with T. B. Handley, and that the judgment, being conclusive upon T. B. Handley, operates with like effect against Charles.   It will be remembered that the action against T. B. and Charles Handley was upon a joint and several promissory note, and was a case in which a several judgment could have been entered.   If both had been served, T. B. might have, if he so desired, permitted judgment to have gone against him by default, and, if so, it could not have been claimed that the default judgment was res adjudicata as to Charles.   Now, would the case have been different if T. B. had been first served, and trial had upon the very ground which Charles Handley now insists discharged the obligation, and Charles had subsequently been brought in, and sought to resist

payment by an interposition of the same defense? We think it can hardly be so claimed. In *Eikenberry* v. *Edwards*, 71 Iowa, 82 (32 N. W. 183, 56 Am. Rep. 360), a case of some analogy, several parties were sued, and, having severed at the trial, one of them prevailed. Subsequently, in a trial against another, it was sought to conclude the plaintiff by the former judgment. But the court, speaking through ROTHROCK, J., said: "It would be a novelty in the law of former adjudication if a defendant in an action can procure a separate trial as to the issues between him and the plaintiff, and then claim that the trial between the plaintiff and another defendant was an adjudication as to him." As bearing somewhat on the question, see, also, *Smith* v. *Ballantyne*, 10 Paige, 101; *Coleman* v. *Hunt*, 77 Wis. 263 (45 N. W. 1085). It is a fundamental principle that a judgment can only conclude parties and their privies. In so far as it respects the judgment in the case of Jackson against the Handleys, it stands as though Charles had never been made a party or appeared in the action. And the pretended judgment actually entered against T. B. Handley, under the circumstances of the case, could have no more binding force and effect upon Charles than if one had been entered without making him a party in the first instance, as each was entitled to his day in court, and to contest Jackson's right of recovery. No privity of contract can exist between codefendants thus situated. Motion denied.

REHEARING DENIED.