534 December 4, 2024 No. 871

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LANDWATCH LANE COUNTY,
*Petitioner,*

*v.*

LANE COUNTY
and Kim O'Dea,
*Respondents.*

Land Use Board of Appeals
2024019;
A184977

Argued and submitted September 25, 2024.

Sean Malone argued the cause and filed the brief for petitioner.

Gregory S. Hathaway argued the cause for respondent Kim O'Dea. Also on the brief was Hathaway Larson LLP.

No appearance for respondent Lane County.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

Petitioner LandWatch Lane County seeks judicial review of a final order of the Land Use Board of Appeals (LUBA). In that order, LUBA dismissed petitioner's challenge to Lane County's (the county) 2015 approval of intervenor-respondent's application for a forest template dwelling. LUBA concluded that the relevant law, House Bill (HB) 3362(4)(1)(b) (2023), which allows for such a challenge when the approval is based on forged documents, was unambiguous and, as written, did not apply to allow the challenge to the 2015 approval. LUBA reasoned that the 2015 approval itself was not "based on" forged deeds or documents, which in its view, precluded LUBA's jurisdiction under the bill. Petitioner contends that LUBA erred because, in its view, the phrase "based on" is ambiguous, and the legislative history resolves that ambiguity in its favor, making the bill applicable to the challenge at issue here.

We review LUBA's final order to determine whether it is unlawful in substance. ORS 197.850(9)(a). A LUBA order is unlawful in substance if it represents a mistaken construction of applicable law. *Central Oregon LandWatch v. Deschutes County*, 285 Or App 267, 276-77, 396 P3d 968 (2017). The issue here involves LUBA's construction of a statute, which we review for legal error. *Id.* We employ the *PGE/Gaines* methodology to determine the legislature's intent in enacting the law. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Applying that methodology, we conclude that LUBA's final order is unlawful in substance because the phrase "based on" as used in HB 3362 is ambiguous, and the relevant context and legislative history show that the legislature specifically intended to allow the challenge petitioner brings. Accordingly, we reverse and remand for further proceedings.

The underlying facts are thoroughly discussed in our previous opinions addressing the same plots of land and various county actions. *Johnson v. Landwatch Lane County*, 327 Or App 485, 487-88, 536 P3d 12 (2023); *LandWatch Lane County v. Lane County*, 335 Or App 543, ___ P3d ___ (2024). We recount only the facts necessary to resolve the issue in

this case: whether petitioner's challenge to the county's 2015 approval of intervenor-respondent's application for a forest template dwelling falls within the ambit of HB 3362(4)(1)(b).

In 2012, the county approved intervenor-respondent's request for legal lot verifications of three parcels of land. *Johnson*, 327 Or App at 488. The verifications certified that the three parcels were lawfully established units of land, which allowed intervenor-respondent to obtain subsequent land use approvals. *Id.* at 489. With the parcels verified, intervenor-respondent applied for county approval of a forest template dwelling on the properties, and the county approved it in 2015. *Id.* at 488. Intervenor-respondent later sold two of the verified parcels to new owners and retained one for herself.

In 2022, the county discovered discrepancies between the documents that intervenor-respondent submitted in support of the 2012 verifications and the official county records for the three parcels that the county verified. *Johnson*, 327 Or App at 489. The county invoked its county code to revoke the 2012 verifications for all three parcels. *Id.* LUBA later set aside the county revocations because the 2022 revocations were untimely and impermissible attacks on the "final" 2012 land use decisions. *Id.* at 490-91. We affirmed. *Id.* at 498.

After LUBA's decision and before ours, the legislature enacted HB 3362 (2023). Section 4 of the bill waived all statutory standing and time limitations to challenge, among other land use decisions, a county's approval of a forest template dwelling if "[t]he approval of the challenged decision was based on deeds or documents that were forged." Or Laws 2023, ch 543, § 4(1)(b). Petitioner then commenced a new challenge before LUBA. Petitioner invoked the new law to challenge the county's 2015 approval of intervenor-respondent's application for a forest template dwelling on the property that she retained. Petitioner argued that LUBA should set aside the 2015 forest template dwelling approval because it was based on forged deeds and documents that intervenor-respondent submitted to obtain the 2012 verifications.[1]

_____

[1] Intervenor-respondent is a land use attorney who practiced in Eugene. As we explained in a companion opinion, there has not been a finding or indication in the record of this case that intervenor-respondent forged the documents

Intervenor-respondent moved to dismiss the challenge. She argued that petitioner could not avail itself of the new law because the 2015 approval was not itself based on forged deeds or documents. Rather, according to intervenor-respondent, it was the 2012 verification for which the allegedly forged documents were submitted. Given that the verification and forest template dwelling approvals were separate processes, intervenor-respondent argued that petitioner could not use HB 3362(4)(1)(b) to challenge the 2015 forest template dwelling approval.

LUBA agreed with intervenor-respondent. LUBA first looked to the dictionary definition of the word "base" as used in HB 3362(4)(1)(b), noting that it means "foundation" or a "fundamental part of something." *Webster's Third New Int'l Dictionary* 180 (unabridged ed 2002). LUBA then determined that the phrase "based on deeds or documents that were forged" was unambiguous, and that petitioner's challenge could continue only if the allegedly forged documents were foundational to or fundamental to the 2015 decision. LUBA concluded that the 2015 approval was not based on forged deeds or documents, reasoning:

> "In the 2012 Decision, the planning director verified the lawful creation of three parcels. The planning director then based their 2015 Decision approving the forest template dwelling on the 2012 Decision. The planning director did not base their 2015 Decision on the documents that were part of the record for the 2012 Decision. Those documents were not before the planning director and therefore those documents could not have been fundamental to or the foundation of their 2015 Decision. Accordingly, the 2015 Decision was not 'based on deeds or documents that were forged.'"

LUBA thus dismissed petitioner's challenge to the 2015 approval in a final order.

Petitioner now seeks judicial review of LUBA's final order and argues that LUBA misconstrued section (4)(1)(b) of HB 3362 and, for that reason, the order is unlawful in substance. Specifically, petitioner argues that LUBA erred

---

herself, that she has been found to have forged the documents, or that intervenor-respondent knowingly relied on forged documents. *LandWatch Lane County*, 335 Or App at 551 n 1.

in concluding that the phrase "based on" is unambiguous because, in petitioner's view, the phrase is susceptible to more than one meaning. That is, petitioner contends that, even taking the dictionary definitions that LUBA relied on, the 2015 approval of the forest template dwelling could be understood to have been "based on" the same forged deeds and documents used in support of the 2012 legal lot verifications because the 2012 verifications were "foundational" or "fundamental" to the 2015 approval.

Petitioner's argument presents a question of statutory construction. *Central Oregon LandWatch*, 285 Or App at 276-77. Our goal in construing a statute is to discern the most likely intent of the legislature. ORS 174.020(1)(a); *Gaines*, 346 Or at 172. We first examine the text and context of the law. *Gaines*, 346 Or at 171 (citing *PGE*, 317 Or at 610-11). The relevant context includes other provisions of the same law and the statutory framework within which the statute was enacted. *Morsman v. City of Madras*, 203 Or App 546, 561, 126 P3d 6, *rev den*, 340 Or 483 (2006) (citing *PGE*, 317 Or at 610-12). We then consider the pertinent legislative history, to the extent it is useful to our analysis. *Gaines*, 346 Or at 172. As we will explain, here, the text, context, and legislative history show that the legislature intended to allow petitioner's challenge to the 2015 approval of the forest template dwelling.

We begin with the text. The relevant portions of the bill provide:

"(1)   On or before April 1, 2024, notwithstanding the standing requirements of ORS 197.830(2) or the deadlines imposed by ORS 12.140 or 197.830(9), any person may file with [LUBA] a notice of intent to appeal a land use decision made by the county if:

"(a)   The challenged decision approved an application for a template dwelling pursuant to ORS 215.750 * * *;

"(b)   The approval of the challenged decision was based on deeds or documents that were forged[.]"

There is no dispute on appeal that the county's 2015 approval of intervenor-respondent's application for a forest template dwelling was made pursuant to ORS 215.750. The only

question before us is whether the 2015 approval was "based on" forged deeds or documents.

"When the legislature has not specifically defined a term of common usage, we generally assume that the legislature intended to use the term in a manner consistent with its plain, natural, and ordinary meaning, and we often consult dictionaries for guidance in determining what the legislature would have understood a term to mean." *State v. Meiser*, 372 Or 438, 451, 551 P3d 349 (2024) (internal quotation marks omitted). We follow that course here. As LUBA noted, the dictionary definition for "base" includes "foundation" and a "fundamental part of something." *Webster's* at 180. Therefore, for a land use decision to be "based on" forged deeds or documents, the forged deeds or documents must have been the foundation of or fundamental to the decision.

The phrase "based on deeds or documents that were forged" as used in HB 3362(4)(1)(b) does not clearly demonstrate the legislature's intent. On the one hand, the phrase can reasonably be read as LUBA and intervenor-respondent read it: that the 2015 approval decision *itself* was "based on" forged deeds or documents. On the other hand, the phrase can reasonably be read as petitioner reads it: that the 2012 verification decision—for which forged deeds and documents were submitted—served as the foundation for the 2015 approval, meaning the 2015 approval was "based on" forged deeds or documents. In other words, the phrase is ambiguous on the point of what the legislature meant when it used the phrase "based on" in HB 3362(4)(1)(b).

We turn to the context in which HB 3362(4)(1)(b) was enacted, including the legal framework of forest template dwelling approvals. *See Morsman*, 203 Or App at 561 (using surrounding statutory framework to confirm interpretation of a statute). Forest template dwellings are governed by a group of statutes, ORS 215.700 to 215.783, and they "address[] the extent to which owners of forestland may construct dwellings on that land." *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 192, 211 P3d 297 (2009). Although that legal framework supports petitioner's reading of HB 3362(4)(1)(b), it is not entirely conclusive.

A local government may approve an application for a forest template dwelling if, among other things, the land "on which the dwelling will be sited was lawfully established." ORS 215.750(5)(e). A unit of land is considered "lawfully established" if it was created in compliance with applicable land use ordinances and regulations. ORS 92.010(3)(a). One way to assess whether a unit of land is "lawfully established" is to apply for a legal lot verification. *See, e.g.*, *Maxwell v. Lane County*, 179 Or App 409, 411, 40 P3d 532 (2002) (explaining that a local government must determine the legal status of a unit of land at issue in connection with a land use proceeding when determination of legal status is required by state or local legislation); Lane Code (LC) 13.030(3)(p) (defining a legal lot verification as a "determination or decision made pursuant to LC 13.140 that a unit of land is a lawfully established unit of land"); LC 13.140(3) ("A legal lot verification will be approved if the subject property is a lawfully established unit of land * * *."). To verify a unit of land as lawfully established, a property owner must submit evidence of the lawful status of the land, such as deeds and property description cards. LC 13.140(2)(b). Therefore, ensuring that a unit of land is lawfully established is a necessary predicate for a local government to approve an application for a forest template dwelling.

The statutes and county ordinances for forest template dwelling approvals show that, for the county to approve an application for a forest template dwelling, it must first certify the lawful status of the underlying land. Here, intervenor-respondent opted for the legal lot verification route to obtain such certification, and petitioner alleges that intervenor-respondent submitted forged deeds or documents to obtain the 2012 verification. Given that obtaining the verification was the path chosen by intervenor-respondent to show that the land was lawfully established, as necessary for the county to approve the forest template dwelling in 2015, the allegedly forged deeds and documents that supported the verification were foundational to, or a fundamental part of, the 2015 approval of the forest template dwelling. In other words, without obtaining the 2012 legal lot verification—the necessary first step to apply for other land use decisions—intervenor-respondent could not

have applied for the forest template dwelling that the county approved in 2015. The context suggests that the legislature intended for section (4)(1)(b) of the bill to apply to the 2015 forest template dwelling approval.

We also consider the legislative history of HB 3362, which is not only helpful but conclusive. That history confirms that the legislature specifically intended to allow the challenge that petitioner brought to the 2015 approval. As we explained in *LandWatch Lane County*, 335 Or App at 549-52, the bill was introduced at the request of the county. It was specifically intended to protect the two purchasers of two of intervenor-respondent's lots, who did not have knowledge of the underlying fraud, and similarly situated landowners. Written Testimony, House Committee on Agriculture, Land Use, Natural Resources, and Water, HB 3362, Mar 30, 2023 (statement of Alex Cuyler, Lane County Intergovernmental Relations Manager) ("HB 3362 * * * has been narrowly crafted to fix a unique situation for two families residing in Lane County."). The early version categorized certain purchasers of land as "innocent purchasers," and provided them an option to validate their units of land as lawful ones. *See* ORS 92.176 (providing for the validation of unlawfully established unit of land to ratify that land as lawfully established); Written Testimony, House Committee on Agriculture, Land Use, Natural Resources, and Water, HB 3362, Mar 30, 2023 (statement of David Hunnicutt on behalf of Oregon Property Owners Association).

Petitioner[2] in the instant case opposed the introduced version of the bill because, in its view, the purported innocent purchasers of unlawfully established land had recourse through ORS 92.018, which provides for similar purchasers to recover money damages; petitioner also urged the legislature to refrain from involving itself in the litigation over the revocations. Written Testimony, House Committee on Agriculture, Land Use, Natural Resources, and Water, HB 3362 A, Apr 4, 2023 (testimony of Robert

_____

[2] Petitioner is a non-profit land use organization that "works throughout Lane County to protect farm and forest land for farm and forest uses, and from unlawful development." Written Testimony, House Committee on Agriculture, Environment, Natural Resources, and Water, HB 3362, Mar 30, 2023 (testimony of Lauri Segel on behalf of LandWatch Lane County).

Emmons on behalf of LandWatch Lane County). Petitioner argued that, if the legislature were to get involved, legislators should focus their efforts on intervenor-respondent's alleged use of forged documents. *Id.*

In response, the legislature discussed amendments to the bill, including "[p]otential consequences and liability for the land use attorney" allegedly responsible for submitting forged deeds and documents. Staff Measure Summary, Senate Committee on Natural Resources, HB 3362 B, May 17, 2023. The legislature amended the bill to add what is now paragraph (4)(1)(b) to HB 3362, explaining that the addition was intended to address:

> "[A] unique situation of alleged fraud by a Eugene land use attorney \*\*\* who allegedly forged deed details in 2011 that allowed her lot to be split into three developable lots. She sold two of the lots to allegedly innocent purchasers and retained the remaining lot. Following the discovery, Lane County rescinded all permits \*\*\* [t]here is currently active litigation on the issue."

Staff Measure Summary of the Senate Committee on Rules, HB 3362 C, June 21, 2023, 2. The legislature unanimously approved HB 3362 as amended.

The history of the bill confirms that the legislature specifically had the land use decisions that flowed from the 2012 legal lot verifications, including the 2015 forest template dwelling approval, in mind when it passed HB 3362. More specifically, that history shows that the legislature's intent was to allow for an otherwise untimely challenge to the 2015 forest template dwelling approved by the county. There is no indication in the legislative history that the inclusion of "based on" was meant to restrict or limit such a challenge to the 2015 approval. Importantly, there is nothing in the legislative history showing that the approval of a forest template dwelling itself had to be based directly on forged deeds or documents submitted in that particular proceeding.

In consideration of that legislative history, as well as the text and context of HB 3362, we conclude that petitioner's challenge to the county's 2015 approval of intervenor-respondent's application for a forest template dwelling is

covered under HB 3362(4)(1)(b). That is, the 2015 approval was "based on" allegedly forged deeds or documents given that such documents were submitted in support of the 2012 legal lot verifications. As the legal framework for forest template dwellings demonstrates, confirming the lawful status of the land is a necessary first step to obtain approval of a forest template dwelling.

   One other matter bears mentioning. Intervenor-respondent argues that, if we conclude that HB 3362(4)(1)(b) is ambiguous, then we must construe it in her favor. She relies on *Lane County v. Heintz Const. Co. et al*, 228 Or 152, 158-59, 364 P2d 627 (1961), which partially noted that land use laws that impact the property rights of owners should be construed in favor of the owner so as to not prejudice or interfere with property rights. Intervenor-respondent's reliance on *Heintz* is unpersuasive because our "primary function" as a court "is to discern and declare the intent of the legislative body." *City of Portland v. Carriage Inn*, 67 Or App 44, 46, 676 P2d 943 (1984) (so noting in reference to *Heintz*); *see also Bauder v. Farmers Ins. Co.*, 301 Or 715, 722, 725 P2d 350 (1986) (citing cases where court looked to text, context, and legislative history of a statute to discern the statute's meaning after *Heintz*).

   In sum, we reverse LUBA's final order dismissing petitioner's challenge and remand for further proceedings.

   Reversed and remanded.